**COMMERCE UNION BANK, Appellant,**

v.

**George M. TIDWELL, Commissioner of Revenue, State of Tennessee, Appellee.**

Supreme Court of Tennessee.

June 14, 1976.

Alfred E. Abbey, Charles C. Trabue, Jr., William E. Bishop, Trabue, Sturdivant & DeWitt, Nashville, for appellant.

R. A. Ashley, Jr., Atty. Gen., Everett H. Falk, Deputy Atty. Gen., Nashville, for appellee.

Milton P. Rice, Special Counsel, of Counsel: Robins H. Ledyard, General Counsel, on Amicus Curiae brief for National Life and Acc. Ins. Co.

---

## OPINION

FONES, Justice.

The sole question presented in this direct appeal is whether computer "software"[1] is tangible personal property and taxable under the State Sales and Use Tax provisions of T.C.A. §§ 67–3001, et seq.

The Chancellor held that the computer software purchased by the plaintiff-appellant did not constitute nontaxable services, but was tangible personal property and subject to taxation. We reverse.

The applicable Code section reads in part as follows:

> 67–3003. *Levy of tax—Rate.*—It is declared to be the legislative intent that every person is exercising a taxable privilege who engages in the business of selling tangible personal property at retail in this state, or who uses or consumes in this state any item or article of *tangible personal property* as defined in this chapter, irrespective of the ownership thereof or any tax immunity which may be enjoyed by the owner thereof, or who is the recipient of any of the things or services taxable under this chapter, or who rents or furnishes any of the things or services taxable under this chapter, or who stores for use or consumption in this state any item or article of tangible personal property as defined in this chapter, or who leases or rents such property, either as lessor or lessee, within the State of Tennessee. (Emphasis added)

Tangible personal property is defined by T.C.A. § 67–3002(*1*) as "personal property, which may be seen, weighed, measured, felt, or touched, or is in any other manner perceptible to the senses."

Pursuant to T.C.A. § 67–3003, the Commissioner of Revenue assessed a tax deficiency against appellant in the amount of $26,336.32, which was paid under protest. In this appeal only the amount of $4,094.54

remains at issue which represents the total tax, penalty, and interest assessed on the sales and leases of computer software.

Basically, there are two types of software programs. The first is an operational program which controls the hardware and actually makes the machine run; it is fundamental and necessary to the functioning of the computer hardware itself. Secondly, there is an applicational program which is a type of program designed to perform specific functions, such as preparation of the employee payroll, preparation of a loan amortization schedule, or any other specific job which the computer is capable of performing. Applicational programs instruct the central processing unit of the computer to perform the fundamental computations, comparisons, and sequential steps required to take incoming information and compute the desired output. All of the programs involved in this lawsuit, except two, are of the applicational type.

Rather than develop all of its own programs, appellant purchases specialized programs from outsiders. This is the general practice in the computer field. It appears that some of these programs are standard in their design and may be modified to fit the peculiar application of the individual user, while others are unique. The modifications may be minor or complex, depending on the program and its application, and may be performed by the vendor or the user, or both.

The information contained in these programs may be introduced into the user's computer by several different methods. It could be programmed manually by the originator of the program at the location of the user's computer, working from his own instructions; it could be programmed by a remote programming terminal located miles from the user's computer, with the input information transmitted by telephone; or,

---

1. Generally, "hardware" refers to the tangible parts of the computer itself, while "software" refers to information and directions loaded into the machine which dictates different functions for the machine to perform. What triggers these functions are referred to broadly as "pro-grams," and are often accompanied by magnetic tapes and discs, punch cards, manuals, flow charts, and expert engineering assistance to comprise what is known in the industry as computer software.

more commonly, the computer could be programmed by punch cards, magnetic tapes or discs, containing the program developed by the vendor. Often, accompanying the computer program, the vendor will provide manuals, services, and consultation designed to instruct the user's employees in the installation and utilization of the supplied program.

After a program supplied on punch cards has been placed in appellant's computer, the cards are destroyed. The cards cost about $1.30 per thousand, and approximately 4,000 to 6,000 cards are required for a program. When magnetic tapes are utilized as the transmitting device, they are returned to the vendor after the information contained on them has been stored in appellant's computer. Costs for the tape is approximately $11.00 for a reel of tape 200 feet in length. The total cost for programs purchased by appellant has ranged from $700 to almost $60,000.

Appellant argues that while the intellectual processes may be embodied in tangible and physical material, such as punch cards and magnetic tapes, the logic or intelligence of the program is an intangible property right; and it is this intangible property right which is acquired when computer software is purchased or leased.

Appellee views the purchase of software as analogous to the purchase of a phonograph record or the purchase or lease of a motion picture film. He argues that this case is governed by *Crescent Amusement Co. v. Carson*, 187 Tenn. 112, 213 S.W.2d 27 (1948).[2] There, a tax was levied on the rental of motion picture films. This Court rejected appellant's contention that the rental of the film is merely the extension of a license to use and exhibit a copyrighted production which amounts only to the use of an intangible property right. The Court then went on to discuss the cohesiveness of tangible goods and the thought processes, skill, and labor that go into the production of those goods:

"There is scarcely to be found any article susceptible to sale or rent that is not the result of an idea, genius, skill and labor applied to a physical substance. A loaf of bread is the result of the skill and labor of the cook who mixed the physical ingredients and applied heat at the temperature and consistency her judgment dictated. A radio is the result of the thought of a genius, or of several such persons, combined with the skill and labor of trained technicians applied to a tangible mass of substance. An automobile is the result of all these elements, and of patents, etc.; and so on, ad infinitum. If these elements should be separated from the finished product and the sales tax applied only to the cost of the raw material, the sales tax act would, for all practical purposes, be entirely destroyed. The material used in the making of a phonograph record probably costs only a few cents. The voice of a Caruso recorded thereon makes it sell for perhaps a dollar. To measure the sales tax only by the value of the physical material in this phonograph record is to apply an impossible formula."

213 S.W.2d at 29.

The examples given in the *Crescent* case differ from the situation in the case at bar in that no product is created. What is created and sold here is information, and the magnetic tapes which contain this information are only a method of transmitting these intellectual creations from the originator to the user. It is merely incidental that these intangibles are transmitted by way of a tangible reel of tape that is not even retained by the user.

In *Crescent* the tax was levied on the rental of a motion picture film. The film is inherently related to the movie; without the film there could have been no movie. Therein lies the crucial difference. Magnetic tapes and cards are not a crucial element of software. The whole of computer software could be transmitted orally or electronically without any tangible manifes-

2. In 1951 the Legislature changed the result of this case by exempting theaters which pay the 2% privilege tax from operation of the Sales and Use Tax. T.C.A. § 67–3013.

tations of transmission. *See,* Heinzman, *Computer Software—Should It Be Treated as Tangible Property For Ad Valorem Tax?* The Journal of Taxation (September, 1972).

It does not appear that appellee has attempted to tax computer programs purchased by appellant which were transmitted to its computers from outside the State by way of telephone lines. That method of transmission, without question, constitutes the purchase of intangible personal property. The principle is the same, only the method of transmitting the information differs.

Appellee maintains that the sale of a phonograph record, which is taxable as tangible personal property, and the sale of a computer program on a reel of magnetic tape are analogous. One who buys a phonograph record intends to obtain possession of a tangible item. Granted, the sound which emanates from the record when it is played is the object of the purchase; but the purchaser has no other viable method of bringing the music of, say, Caruso into his living room. The phonograph record remains in the possession of the purchaser after its purchase, both during periods of use and non-use.

The instant case presents a different situation. A magnetic tape is only one method whereby information may be transmitted from the originator to the computer of the user. That same information may be transmitted from the originator to the user by way of telephone lines, or it may be fed into the user's computer directly by the originator of the program.

When the information is transferred from the tape to the computer, the tape is no longer of any value to the user; and it is not retained in the possession of the user. The information on the tape, unlike the phonograph record, is not complete and ready to be used at the time of its purchase. It must be translated into a language understood by the computer. Once this information has been translated and introduced into the computer and the tapes returned or the punch cards destroyed, what actually remains in the computer is intangible knowledge; this is what was purchased, not the magnetic tapes or the punch cards. *District of Columbia v. Universal Computer Associates, Inc.,* 151 U.S.App.D.C. 30, 465 F.2d 615 (1972). Transfer of tangible personal property under these circumstances is merely incidental to the purchase of the intangible knowledge and information stored on the tapes. *See, Washington Times-Herald, Inc. v. District of Columbia,* 94 U.S.App.D.C. 154, 213 F.2d 23 (1954). There the newspaper had purchased from an artist the right to reproduce his cartoons. These cartoons were transferred to the newspaper and were physically embodied in mats which were then used to reproduce the cartoons in the newspaper. The Court held that what the newspaper had purchased was the right to reproduce the cartoons, and not the material upon which the cartoons were impressed.

In a closely analogous, *Dun & Bradstreet, Inc. v. City of New York,* 276 N.Y. 198, 11 N.E.2d 728 (1937), the New York Court of Appeals held that financial informational services rendered to clients of Dun & Bradstreet were nontaxable even though reference books containing financial information were delivered to the subscribers. No separate charge was made for the books, and they could not be obtained without subscribing to the service. Also, in that case, as here, the same service could have been rendered without transferring the reference books, but the cost of the service would have been much higher.

We hold that the sale of computer software does not constitute the sale of tangible personal property for the purposes of T.C.A. §§ 67–3001 et seq.

The decree of the Chancery Court of Davidson County is reversed and a decree will be prepared and entered in this Court awarding judgment to appellant for the stipulated sum. Costs are assessed against the Commissioner.

COOPER, C. J., and HENRY and BROCK, JJ., concur.

HARBISON, J., not participating.