UNIVERSAL IMAGES, INC., Appellant,

v.

MISSOURI DEPARTMENT OF REVENUE, Respondent.

No. 61474.

Supreme Court of Missouri, Division No. 2.

Dec. 15, 1980.

Charles C. Shafer, Jr. and Herman M. Shaffer, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Arnold Day, Richard Wieler, Asst. Attys. Gen., Jefferson City, for respondent.

STOCKARD, Commissioner.

Following an audit of the records of Universal Images, Inc., appellant herein, the Director of Revenue, made a use tax assessment for the period of January 1, 1974 to November 30, 1976 in the amount of $3,799.02, which included penalties and interest. Appellant filed a petition for reassessment pursuant to § 144.680 (all statutory references are to RSMo 1978), and after a formal hearing a final decision was entered November 27, 1978 upholding the assessment. After an unavailing petition for review in the Circuit Court of Jackson County, an appeal has been perfected to this court.

Appellant is a Missouri corporation located in Raytown and is engaged in the business of providing custom produced film for business concerns, the majority of which consists of commercial advertisements shown in indoor and outdoor theaters. Appellant secures agreements with theaters to display commercial advertising on their screens, and then it solicits local merchants as clients to advertise their services or products on the motion picture screens. The advertisers pay a fee to appellant for the use of the appellant's commercial advertising product, which is a moving picture film with sound accompanyment.

In the production process appellant purchases color film and sends a camera crew to a designated location to take a thirty–second moving picture. The exposed film, together with a transcript containing a scenario of conversations designed to match the actions of the persons shown on the film, is sent to one of three processing laboratories located in either Colorado, California, or Illinois. The film is there processed and the transcript of the commercial message is voiced by staff announcers for recordation onto what are called optical tracts, which are sound recordings of the transcript. The processed film and the optical tract are returned to appellant for editing, cutting and matching, and they are then returned to the processing laboratory for development and preparation of the ultimate final print which will have a voice related to the picture showing the client's specific type of business or product. In describing the processing performed by the laboratories various terms are used. The terms "sound," "mix," and "record" refer to the act of recording a voice mixed with background music on tape which is later transferred to an optical tract. The term "transfer" refers to the act of transferring the message, as recorded on tape or record, onto an optical track. The term "blow–up"

refers to the act of enlarging an optical track on 16mm film to 35mm film. After processing the prints are shipped to appellant, or at times directly to the theater designated by appellant. The number of prints ordered from the laboratory depends upon the number of theaters appellant is able to get to show the commercials. The period for which the commercial is shown by the theaters is generally governed by contract and is usually between six months and a year. The film is then discarded by the theater or is returned to appellant. It has no salvage value.

■ Respondent has filed in this court a motion to dismiss the appeal "for lack of subject matter jurisdiction." He contends that because the final decision of the Director of Revenue was rendered after August 13, 1978, the date on which S.B. 661, Laws of Mo. 1978 pp. 441–61 became effective, review of that decision was required to be performed by the Administrative Hearing Commission, and the circuit court had no jurisdiction of the review. *Labrayere v. Goldberg,* 605 S.W.2d 79 (Mo. banc 1980), is decisive of this contention, and the motion to dismiss the appeal is overruled.

Section 144.610 RSMo 1978 provides:

"1. A tax is imposed for the privilege of storing, using or consuming within this state any article of tangible personal property * * * in an amount equivalent to the percentage imposed on the sales price in the sales tax law in section 144.-020. This tax does not apply with respect to the storage, use or consumption of any article of tangible personal property purchased, produced or manufactured outside this state until the transportation of the article has finally come to rest within this state or until the article has become commingled with the general mass of property of this state.

"2. Every person storing, using or consuming in this state tangible personal property purchased from a vendor is liable for the tax imposed by this law, and the liability shall not be extinguished until the tax is paid to this state * * *."

The term "use" is defined in § 144.605.10 RSMo 1978, as "the exercise of any right or power over tangible personal property incident to the ownership or control of that property * * *."

The Missouri use tax is not imposed upon the article or upon its sale; rather, the tax is levied on the privilege of using, storing or consuming the article within the state. *Management Services, Inc. v. Spradling,* 547 S.W.2d 466 (Mo. banc 1977). The measure of the tax is the sales price of the article. Section 144.605.6 RSMo 1978, defines "sales price" as "the consideration including the charges for services, except charges incident to the extension of credit, paid or given, or contracted to be paid or given, by the purchaser to the vendor for the tangible personal property, including any services that are a part of the sale, valued in money, whether paid in money or otherwise, * *." In *Kilbane v. Director of Revenue,* 544 S.W.2d 9, 12 (Mo. banc 1976), it was stated in reference to the sales tax law that "nothing [therein] indicates that whether sales tax is due depends on the respective percentages of labor and materials in the product sold." This is equally applicable to the Use Tax Law.

When stripped of the technical terms applicable only to the particular operations of appellant, it is reasonably clear that appellant supplies to an out–of–state production laboratory, in the form of exposed film and scenario, the specifications and details of a product which it desires the laboratory to produce and deliver to appellant; namely a 35mm film (or print) which contains the moving picture sequence shown on the exposed film submitted to it by appellant, and which also contains an optical tract which consists of a "mix" of the vocal recitation of what is shown in the scenario with background music. That completed product is then sent to appellant, or to the theater designated by appellant, and it becomes the property of appellant. For a fee appellant permits the product to be used by theaters for display of advertising material on motion picture screens.

Appellant argues that it is not "storing, using or consuming" tangible personal property in this state. However, it is clear from the above facts that appellant purchases from out–of–state vendors the moving picture film or prints containing optical tracts, and that the cost includes the services incident to their production. The prints become and remain the property of appellant, which during their useful life are stored in this state, and during that time appellant charges advertisers a fee for the use of its film, thereby exercising the right and power of ownership. The Director of Revenue properly assessed a use tax based on the cost of the film or prints, including services, other than charges incident to the extension of credit, that are a part of such sales. See *Kurtz Concrete, Inc. v. Spradling*, 560 S.W.2d 858 (Mo. banc 1978).

Appellant also challenges the audit made by a representative of respondent, and it asserts that if a use tax is due based on the cost of the film or prints purchased, the auditor included unauthorized items. Respondent admits in his brief that "the testimony is conflicting." It appears, however, that the auditor did include in his computation of the tax the amounts shown on invoices which contained no reference to the purchase of prints or film. Those charges were for services, and there is nothing to indicate that those charges were for services incidental to the production of a product that was purchased by appellant. For example, as appellant states, in some instances the order for the print was cancelled after some of the services were rendered by the laboratory.

Charges for services by an out–of–state laboratory which were not incidental to the production of an item of personal property purchased by appellant are not subject to the use tax, and the Director of Revenue is not entitled to indulge in assumptions not supported by the evidence.

The judgment of the circuit court is reversed and the cause remanded with directions to remand the assessment to the Department of Revenue for further proceedings and the entry of a new assessment.

PER CURIAM:

The foregoing opinion by STOCKARD, C., is adopted as the opinion of the court.

All of the Judges concur.