Ray S. JAMES, Director of Revenue, State of Missouri, Petitioner,

v.

TRES COMPUTER SYSTEMS, INC., et al., Respondents.

No. 63662.

Supreme Court of Missouri, En Banc.

Dec. 3, 1982.

John Ashcroft, Atty. Gen., Madeleine O. Birmingham, Asst. Atty. Gen., Jefferson City, for petitioner.

Johnny K. Richardson, James C. Swearengen, Jefferson City, for respondents.

DONNELLY, Chief Justice.

TRES Computer Systems, Inc. is a Texas-based corporation authorized to conduct business in Missouri. TRES sold computer software known as TRES On-Line Customer Information System (custom-made data and computer programming) to a Missouri customer. This sale was accomplished through the use of tapes containing the

data and programs. The retail value of the tapes before they contain any information is fifty dollars. The Missouri customer paid TRES approximately $135,000 for the data and programs.

TRES reported to the Missouri Department of Revenue that the transaction involved fifty dollars—i.e., the retail value of the tapes. In July 1979, the Department of Revenue determined that TRES should pay a use tax based on the $135,000 transaction value of the software. Accordingly, the Department of Revenue made an additional tax assessment of $4218.75, plus $421.88 penalty, plus $295.32 in interest. TRES did not pay any of the additional assessment but instead filed a petition for review of the assessment with the Administrative Hearing Commission.

In that proceeding the parties stipulated to certain operative facts: (1) the retail value of the tapes without any data or programming on them is fifty dollars, (2) the tapes containing the data and programs were sold for approximately $135,000, (3) "the data is intangible property, however, the tapes on which this data is contained and transmitted are tangible personal property," (4) TRES could have transmitted the data and programs involved to its customer by electronic signals directly over electronic telecommunications, and (5) TRES sold to its Missouri customer a perpetual non-exclusive license for this software, but the customer cannot sell or otherwise convey the software to others.

The Administrative Hearing Commission determined that the Department of Revenue's additional assessment was null and void because the sale of the data on tapes was the sale of intangible technical professional services—not tangible personal property—and the use of the information on the tapes was not the use of tangible personal property. Therefore, it was not taxable under § 144.610, RSMo 1978.

■ Subsequent to that decision, the Director of Revenue filed with this Court a petition for judicial review, pursuant to § 161.337, RSMo 1978. This Court has jurisdiction to review the final decision of the Administrative Hearing Commission because construction of a revenue law of this State is involved. Mo.Const. art. V, § 3; *Daily Record Company v. James,* 629 S.W.2d 348, 349 (Mo.banc 1982); *Goldberg v. Administrative Hearing Commission,* 609 S.W.2d 140, 142 (Mo.banc 1980). A decision of the Administrative Hearing Commission "shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record, . . . and if the approval or disapproval of the exercise of authority in question by the administrative hearing commission does not create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency." § 161.338, RSMo 1978. But of course, where a question of law is involved, it is a matter "for the independent judgment of the reviewing court, and correction where erroneous." *Daily Record Company v. James,* 629 S.W.2d 348, 351 (Mo.banc 1982).

The Director of Revenue contends that the computer software is taxable as tangible personal property under § 144.610, RSMo 1978, because he views the data and programs as being inseparable from the tapes containing them. TRES, on the other hand, views the tapes as mere conduits or containers for the intangible professional services sold.

■ Given that there is no dispute that the data and programs sold are intangible personal property, the question is whether, by their presence on the tapes, they could become tangible personal property so as to be taxable under § 144.610, RSMo 1978. Chapter 144 does not provide any guidance on the specific issue at hand. *Cf.* § 144.-010.1(8), RSMo 1978. However, many courts have spoken on the issue and most have decided that the intangible character is not lost. *See e.g., State v. Central Computer Services, Inc.,* 349 So.2d 1160 (Ala.1977); *Commerce Union Bank v. Tidwell,* 538 S.W.2d 405 (Tenn.1976); *First National Bank of Fort Worth v. Bullock,* 584 S.W.2d 548 (Tex.Civ.App.1979). Some courts apply

the "essence of the transaction" test. That is, where the court determines that the presence of the data on the tapes is merely an incidental physical commingling of the tangible tapes and the intangible information which is actually the subject of the transaction. *E.g., State v. Central Computer Services, Inc., supra; First National Bank of Springfield v. Department of Revenue,* 85 Ill.2d 84, 51 Ill.Dec. 667, 421 N.E.2d 175 (1981). In a related test, the court attempts to discover the intent of the parties. If they intend that the tapes serve only to convey the computer data and then be discarded, the value of the professional services is not considered taxable as tangible personal property. *E.g., First National Bank of Fort Worth v. Bullock, supra; see also Texas Instruments, Inc. v. United States,* 407 F.Supp. 1326 (N.D.Texas 1976). By comparison, the court in *Commerce Union Bank v. Tidwell, supra,* sought to ascertain whether a finished product was created and sold, as opposed to whether information was being conveyed. 538 S.W.2d at 407. The *Tidwell* court decided that computer data and programs were being conveyed and therefore the information's value was not taxable as tangible personal property. *Id.*

Most of the difficulty present in resolving the question before us is attributable to the necessity of employing the word "tangible", a word obviously associated with simple human sensory perception, to analyze a problem set in a background of high technology. We recognize that computer technology is rapidly developing in complexity and, therefore, do not intend to formulate a fixed, general rule which later could have unpredictable results.

The data and programs *in this case* should not be taxed as tangible personal property. First, the tapes themselves were not the ultimate object of the sale. The customer purchased them because they contained the data and programs which it desired for its computer. The tapes are merely a medium to convey the data and programs to the customer's computer. After they are used to program the computer they can be discarded. The court in *Com-*

*merce Union Bank v. Tidwell,* 538 S.W.2d 405 (Tenn.1976), said it well:

What is created and sold here is information and the magnetic tapes which contain this information are only a method of transmitting these intellectual creations from the originator to the user. It is merely incidental that these intangibles are transmitted by way of a tangible reel of tape that is not even retained by the user.

*Commerce Union Bank v. Tidwell,* 538 S.W.2d at 407. The *Tidwell* court also stated:

When the information is transferred from the tape to the computer, the tape is no longer of any value to the user; and it is not retained in the possession of the user. The information on the tape, unlike [a] phonograph record, is not complete and ready to be used at the time of its purchase. It must be translated into a language understood by the computer. Once this information has been translated and introduced into the computer and the tapes returned or the punch cards destroyed, what actually remains in the computer is intangible knowledge; that is what was purchased, not the magnetic tapes or the punch cards. *District of Columbia v. Universal Computer Associates, Inc.,* 151 U.S.App.D.C. 30, 465 F.2d 615 (1972). Transfer of tangible personal property under these circumstances is merely incidental to the purchase of the intangible knowledge and information stored on the tapes. (citations omitted)

*Commerce Union Bank v. Tidwell,* 538 S.W.2d at 408; *see also Janesville Data Center, Inc. v. Wisconsin Department of Revenue,* 84 Wis.2d 341, 267 N.W.2d 656, 658 (1978); *cf. Bullock v. Statistical Tabulating Corp.,* 549 S.W.2d 166 (Tex.1977).

Second, it was not necessary that the information purchased be put on tape. It could have been sent to the customer through electronic communications and fed directly into the computer. In *Tidwell* the court observed:

A magnetic tape is only one method whereby information may be transmitted from the originator to the user by way of telephone lines, or it may be fed into the user's computer directly by the originator of the program.

*Commerce Union Bank v. Tidwell,* 538 S.W.2d at 408. *See also State v. Central Computer Services,* 349 So.2d 1160, 1162 (Ala.1977).

The Director argues that the Hearing Commission's decision is contrary to *Universal Images, Inc. v. Department of Revenue,* 608 S.W.2d 417 (Mo.1980) because there the Court held that motion picture film was taxable as tangible personal property at its transaction value. The Director equates the film with the tapes in this case. We disagree. Instead, we embrace the idea that "[t]he physical presence of the movie film is essential to broadcasting the intangible artistic efforts of the actors." *State v. Central Computer Services,* 349 So.2d at 1162. This view is also shared by the Illinois Supreme Court which, in holding computer software not taxable as tangible personal property, stated:

> The plaintiff bank purchased, in substance, the means of programming its computer so that it could perform functions the bank needed to have performed. The bank did not desire to spend the money or time to formulate the programs through its own data-processing staff. Therefore, it purchased instruction programs from other sources. It simply happened that, for the sake of convenience and easy handling, the programs were recorded on magnetic tapes. The tapes were certainly not the only medium through which the information could be transferred. In this way, the tapes differ from a movie film, a phonograph record or a book, whereby the media used are the only practicable ways of preserving those articles. Thus, *while those articles and the tapes are similar in that they physically represent the transfer of ideas or artistic processes, a more significant distinction is that those articles are inseparable from the ideas or processes, whereas computer programs are separable from the tapes.* (emphasis added).

*First National Bank of Springfield v. Department of Revenue,* 85 Ill.2d 84, 51 Ill. Dec. 667, 421 N.E.2d 175, 178 (1981). The movie film in *Universal Images* was purchased as a finished product with the idea that the tangible film itself would be used and reused. As noted above, the tapes in this case are not employed in the same manner. *Universal Images* does not control this case.

The Director also contends that the Hearing Commission's decision conflicts with *Kilbane v. Director of Revenue,* 544 S.W.2d 9 (Mo.banc 1976) because there this Court held that the proportionate percentages of labor and material would not be considered in determining whether an item was taxable as tangible personal property. In *Kilbane* the appellant operated a dental laboratory and a sales tax was imposed on his sale of bridgework and crowns to dentists. As one of his arguments, he contended that there should be no sales tax on the entire transaction value of the bridgework and crowns because 80% to 95% of its value was labor whereas only 5% to 20% was materials. The Court rejected the argument and held the dentist liable for the tax on the bridgework and crowns. *Kilbane v. Department of Revenue,* 544 S.W.2d at 12.

The Director's argument that *Kilbane* supports his position that the data and programs sold here are taxable as tangible personal property is unconvincing. In *Kilbane* the ultimate manifestation of the labor—the dental work sold to dentists—easily fits within the definition of "tangible personal property." Those finished products were to be utilized in their manufactured form to bring about a desired result in a patient's dental health. Here, the professional services (the data and programs) are intangible and remain so forever. *Kilbane* does not persuade us to hold that the computer tapes in this case are taxable as tangible personal property at the $135,000 transaction value.

The decision of the Administrative Hearing Commission is affirmed.

SEILER, WELLIVER, HIGGINS and GUNN, JJ., concur.

RENDLEN, J., dissents in separate dissenting opinion filed.

FINCH, Senior Judge, dissents in separate dissenting opinion of RENDLEN, J.

BILLINGS, J., not participating because not a member of the Court when cause was submitted.

RENDLEN, Judge, dissenting.

I respectfully dissent believing that the magnetic tapes in question are subject to Missouri's Use Tax imposed on "the privilege of storing, *using* or consuming within this state *any* article of tangible personal property ...." Section 144.610.1, RSMo 1978. The tapes were purchased from the vendor, a Texas-based corporation, for *use* by the Missouri vendee for a retail price of $135,000.00. The taxpayer-vendor TRES Computer Systems, Inc. (TRES) contended, and the majority adopts the view, that the retail value of blank-unrecorded-tapes was $50.00 and tax on that amount only was due. By so holding the majority provides an unwarranted exemption for $134,950.00 of the purchase price and, of course, voids the penalty and interest assessed by the Department of Revenue.

Under our statutes the tax is based on the sales price of the article, § 144.610.1, RSMo 1978,[1] and "sales price" is defined in § 144.605(6) as

"the consideration including the charges for services, ... paid ... by the purchaser to the vendor for the tangible personal property, including any services that are a part of the sale, valued in money, whether paid in money or otherwise ...."

The term "use" is defined in § 144.605(10) as

"the exercise of any right or power over tangible personal property incident to the ownership or *control* of that property ...." (Emphasis supplied).

Most certainly the tapes were "used" by the vendee who, as stipulated by the parties either *owned* or had the *exclusive* right to perpetual *control* of the tapes and could *use* them for its purpose for all time.

In my view the majority mistakenly determines the statutory phrase "tangible personal property" does not include and make subject to tax the *full value* of the tapes purchased from respondent "TRES". The bases for the majority's conclusion that the recorded tapes were not tangible personal property are: (1) the tapes could be discarded after they were used and were not intended for "reuse", (2) "information" was the object of the sale and the tangible tapes but a medium of conveyance from which the information was "separable", and (3) the tangible tapes were not essential to transmittal of the desired information.

Addressing first the majority's proposition that the tapes can be discarded and not reused, this fact is equally true of "wax records" used to make tapes or other records, magnetic tapes employed to record other tapes, and how-to books used to learn a skill. Once used, they too can be discarded and under the majority view this factor would provide a basis for their escape from sales/use tax.

Quite interestingly, respondent does not assert and the record does not indicate that the tapes *are* discarded and from this it may be assumed they are preserved for possible future use, as in the event of a computer memory malfunction. Further, the stipulation relating the parties' agreement belies any inference that the tapes will be destroyed or discarded, for the vendee has purchased a "perpetual nonexclusive license" for the "software" (magnetic tapes) and the perpetual "use" of the tapes. Assuming, however, the tapes here can be discarded, the same can be said, as noted above, of phonograph records used to make tapes, recipe books used to program microwave ovens and how-to books used to learn a skill. Once used, they too can be discarded. Of prime importance here is the use, not the ultimate fate of tangible per-

---

1. All statutory references are to RSMo 1978     unless otherwise noted.

sonal property purchased. Under § 144.-610.1, RSMo 1978, it is the privilege of storing, *using* or consuming tangible personal property within this state that is subjected to the use tax. I gather from the record that in this case the enhanced magnetic tapes, not blank tapes and not just information stored on the tapes, but *the enhanced tapes themselves, were used* to program TRES customer's computer. Whether an article of tangible personal property is discarded or reused after *it is used* by the vendee is irrelevant to the use tax statute.

Regarding the second of the bases advanced for its holding, the majority relying on *First National Bank of Springfield v. Department of Revenue*, 85 Ill.2d 84, 51 Ill.Dec. 667, 421 N.E.2d 175 (1981), discussed how the bank in that case purchased magnetic tapes to program its computer, noting that the Illinois Court held that the "programs" contained in the tapes were not taxable because they were "separable from the tapes". While in contrast, the majority opines, *information* contained in a "movie film" "phonograph record" or "book" is *inseparable* from the medium of transmittal.

This proposition too is flawed because the program (information) contained in a movie film, phonograph record, book or magnetic tape is not *inseparable* but rather may be readily separated or transferred to other media for subsequent use. With phonograph records (or pre-programmed magnetic tapes), a common practice is, by use of the "tape deck", to record on magnetic tapes (cassette, reel-to-reel, etc.) the program from the "wax record" (or tape), thereby separating the artistic process, instructional material or other *information* from the record (or tape) and transferring it to another medium for storage and future use. Nevertheless the retail price of the wax record, movie film or programmed magnetic tape is the basis for the sales or use tax, not the price of unexposed film or a blank wax record or an unrecorded magnetic tape. How can the same not be said of the tapes here in question?

The third basis for the majority's holding that the tapes enhanced with data and programming do not constitute tangible personal property is that a tangible medium was not necessary to convey the intangible object of the sale.

I find no justifiable basis (as done by the majority) for distinguishing these pre-recorded magnetic tapes containing instructional programming from any other pre-recorded magnetic tapes (cassette, reel-to-reel, etc.) bearing instructional programming *or artistic offerings which are sold* and which, under the sales or use tax statutes, are taxed at their transactional value. In each instance an intangible (the program) is the principal object of the sale. In each case a tangible medium is selected by the vendor and vendee to convey the intangible instruction or entertainment. In each case, the entertainment or instruction might be transmitted by other means, for example, music or motivational instruction may be transmitted over telephone wires or by radio wave; movie film may be transmitted by television employing cable, microwave, or other means. However, it was *the choice of the parties* here to employ magnetic tapes which were prepared by TRES for delivery and sale to its Missouri customer, and the parties' selection of tapes as the medium does not somehow render that programmed tape 99.97% intangible. That the parties could have chosen to transmit the program by electronic telecommunication does not alter the fact that they chose to put it in tangible form. Under § 144.610.1, that which *is* tangible is subject to tax.

In *Universal Images, Inc. v. Missouri Department of Revenue*, 608 S.W.2d 417 (Mo. 1980), it was held that 35 mm movie film produced to the customer's specifications was tangible personal property, and the Director of Revenue properly assessed a use tax based on the cost of the film, including services. The majority would distinguish *Universal Images* on the ground the movie film there was purchased as a finished product to be "used and reused." As far as I can tell, the magnetic tapes herein were purchased as a finished product with the idea that the tangible tapes themselves

would be *used* to program customer's computer, and though the customer may decline to reuse these tapes, I nowhere find *reuse* as a prerequisite under § 144.610.1 for tax liability.

I would follow the holding of *Universal Images* and treat the magnetic tapes in this case as we treat movie film, records or cassette tapes, and subject them to the use tax at their transaction value.

Finally it might be argued that a distinction is to be made between the customized magnetic tapes here and noncustomized tapes widely distributed for sale in Missouri. Such contention, however, runs afoul the statutory language which permits no such distinction and, if accepted, would judicially create a new exemption for any product bearing customized information such as magnetic sound recorded tapes, video tapes, movie film, etc. In this connection, the Court has steadfastly refrained from reading into the use tax act exemptions that do not clearly appear therein. *State ex rel. Conservation Commission v. LePage*, 566 S.W.2d 208, 211 (Mo.banc 1978); *Farm and Home Savings Assn. v. Spradling*, 538 S.W.2d 313, 319 (Mo.1976). Additionally, this argument (customization) has been effectively disposed of by this Court in *Universal Images, Inc. v. Missouri Department of Revenue*, 608 S.W.2d 417 (Mo.1980) where it was held that highly personalized and customized film strips bearing a mix of sound and visual images were subject to Missouri's use tax.

For these reasons I would reverse the decision of the Administrative Hearing Commission.