**K & A LITHO PROCESS, INC.,**
Appellant,

v.

**DIRECTOR OF REVENUE, et al., Respondents.**

No. 64585.

Supreme Court of Missouri,
En Banc.

June 30, 1983.

Roger J. Barbieri, Vito C. Barbieri, Barbieri & Barbieri, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Melodie A. Powell, Madeleine O. Birmingham, Asst. Attys. Gen., Jefferson City, for respondents.

Lawrence P. Katzenstein, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, amicus curiae.

BILLINGS, Judge.

The issue for determination in this appeal is whether the lithographic process performed by K & A Litho Process, Inc., for others is a sale at retail and subject to Missouri Sales Tax. The Director of Revenue's contention that the process was taxable was sustained by the Administrative Hearing Commission and this appeal followed.[1] We reverse.

K & A receives a color film transparency from an outside source, such as a printer, advertising agency, or publishing house. By a highly technical and scientific procedure the colors are separated onto a sheet of film and a cromalin or color key is prepared. A printer utilizes the color separated film in making the plate which will reproduce in printed color that which was photographically reflected in the transparency. The cromalin or color key shows the proper colors and serves as a guide to the printer in mixing ink colors so as to duplicate the colors in the transparency. Once the printer has used the color separated film and color key they serve no other function and are usually discarded. From the printer's plate comes the finished product, a printed color photograph.[2]

Under the standard of review set forth in § 161.338, RSMo 1978, "A decision of the Administrative Hearing Commission 'shall be upheld when authorized by law and supported by competent and substantial evidence upon the whole record, . . . and if the approval or disapproval of the exercise of authority in question by the administrative hearing commission does not create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency.' § 161.338, RSMo 1978. But, of course, where a question of law is involved, it is a matter 'for the independent judgment of the reviewing court, and correction where erroneous.' *Daily Record Company v. James,* 629 S.W.2d 348, 351 (Mo. banc 1982)." *James v. TRES Computer Service, Inc.,* 642 S.W.2d 347 (Mo. banc 1982).

Missouri sales tax is imposed on the gross receipts of all sellers in this state for the privilege of engaging in the business of selling tangible personal property at retail. Section 144.020, RSMo 1978. A "sale at retail" is defined at § 144.010.1(8) as "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption and not for resale in any form as tangible personal property, for a valuable consideration; . . . ."

K & A contends its lithographic process is a service, the emphasis being the skill and experience of the lithographer, and that the color separation and color key is merely incidental to this service. In the alternative, K & A claims that the process is merely a segment of a larger production operation, and hence does not constitute a "retail sale". In either case, K & A contends there would be no taxable event.

In *James v. TRES Computer Service, Inc.,* 642 S.W.2d 347 (Mo. banc 1982), the transaction involved a sale of computer software. This was custom-made data and computer programming, transferred to the

---

1. The appeal was lodged in the Missouri Court of Appeals, Western District, pursuant to § 161.337, RSMo 1978. That court Mo.App., 642 S.W.2d 701 concluded that construction of revenue laws of this State was involved [Mo. Const. Art. V, § 3] and ordered the case transferred to this Court pursuant to Mo.Const. Art. V, § 11.

2. *Lithography.* A printing process in which the image configuration to be printed is rendered on a flat surface . . . and treated so that it will retain ink while the nonimage areas are treated to repel ink.

   *Chromolithography.* The art or process of printing color pictures from a series . . . of plates by lithography.
   American Heritage Dictionary (1981).

customer through tapes containing the data. The retail value of the tapes alone was fifty dollars. Once the tapes contained the special information, however, the value was $135,000. The issue in TRES was whether there was tax owing based on the $135,000 value. The Commission found that the sale of the data on the tapes was the sale of intangible *technical professional services*—not tangible personal property— and the use of the information on the tapes was not the use of tangible personal property. In affirming the commission's finding, this Court held that "[t]he data and programs in this case should not be taxed as tangible personal property. . . . [T]he tapes themselves were not the ultimate object of the sale. The tapes are merely a medium to convey the data and programs to the customer's computer. After they are used to program the computer, they can be discarded." *James v. TRES Computer,* 642 S.W.2d at 349.

We believe the reasoning of TRES is applicable to the process employed by K & A in the case before us. The film resulting from the color separation of the transparency contains colored dots. The color key is a composite of the separated film. The piece of film serves only to convey the transparency colors and having done so is of no further value. The color separated film and color key are the result of highly skilled and technical services.

We distinguish here, as we did in TRES Computer, the case of *Universal Images, Inc. v. Department of Revenue,* 608 S.W.2d 417 (Mo.1980). That case involved motion picture film, which was held to be tangible personal property. The tax there was correctly levied on the movie, which is substantial property with lasting value. The movie was a final, finished product, unlike the color separation and color key involved here. As we noted in TRES Computer, "[t]he movie film in Universal Images was purchased as a finished product with the idea that the tangible film itself would be used and reused." 642 S.W.2d at 350.

Here, the separation process and color key is merely incidental to the skilled services performed by the lithographer, and unlike the movie film, it does not constitute an end product of a final and lasting nature.

Further support for our position is found in 68 Am.Jur.2d *Sales and Use Taxes,* § 76 at 117 (1974), which states the following:

In many cases it has been held or stated that where a contract contemplating the creation of, and transfer of title to, certain property also requires the exercise of a high degree of skill, and the materials involved are of relatively little value while the principal value of the finished product lies in the skill or services to be rendered, and such product is of little value to anyone other than the buyer, the contract will be deemed to contemplate a rendition of personal services rather than a sale of goods . . . .

We are persuaded by the reasoning used in *TRES Computer, supra,* that the lithographers "technical professional services" were the "ultimate object of the sale" and that the color separation and color key constituted an item incidental to that service and not tangible personal property which should be taxed. 642 S.W.2d at 349.

The judgment of the Administrative Hearing Commission is reversed.

GUNN, BLACKMAR and DONNELLY, JJ., LOWENSTEIN, Special Judge, and MORGAN, Senior Judge, concur.

RENDLEN, C.J., concurs in result.

WELLIVER and HIGGINS, JJ., not sitting.