TRAVELHOST OF OZARK MOUNTAIN
COUNTRY, Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

MID AMERICA TRAVELHOST
ENTERPRISES, INC.,
Appellant,

v.

DIRECTOR OF REVENUE,
Respondent.

No. 71861.

Supreme Court of Missouri,
En Banc.

March 13, 1990.

Rehearing Denied April 17, 1990.

John R. Lewis, Mary Lou Martin, Springfield, for appellant.

William L. Webster, Atty. Gen., Mark S. Siedlik, Asst. Atty. Gen., Jefferson City, for respondent.

ROBERTSON, Judge.

The Director of Revenue (the Director) assessed use tax against appellants, Travelhost of Ozark Mountain Country (Travelhost Ozark) and Mid–America Travelhost Enterprises, Inc. (Mid–America). Travelhost Ozark and Mid–America challenged the assessments, claiming an exemption from use taxation under Section 144.034, RSMo 1986. The issue is whether appellants' purchase and distribution of Travelhost magazine on behalf of its advertising customers constitutes the tax-exempt sale of advertising.

The Administrative Hearing Commission (the Commission) found appellants' business activities taxable. Appellants sought review in this Court. Because this case involves the construction of the revenue laws of this State, we have exclusive appellate jurisdiction. Mo. Const. art. V, § 3. The decision of the Administrative Hearing Commission is affirmed in part and reversed in part and remanded with directions.

## I.

Travelhost Ozark and Mid–America are licensees of Travelhost Magazine, Inc., of Dallas, Texas (Travelhost Texas). Appellants are advertising agencies in the business of selling advertising and distributing a magazine entitled, *Travelhost*, which is aimed at tourists and other travelers. Travelhost Texas publishes and prints the *Travelhost* magazine. The magazine is a controlled-circulation publication, not available by subscription or on newsstands, but only by distribution, free of charge, in hotels, motels and other businesses frequented by tourists and travelers. The sole purpose of the magazine is to serve as an advertising vehicle targeted to the tourist/traveler market.

Each of the appellants has an exclusive right to sell advertising for the *Travelhost* magazine within the geographic territory

of its license. In addition, as part of the obligations imposed by the license, appellants distribute the *Travelhost* magazine to hotels, motels and other businesses within the territory of their respective licenses.

The magazine itself consists of a national section and a local section. Each of the appellants is solely responsible for the composition of the local section within its territory. Appellants fill their respective local sections by the sale of advertising services to merchants and others who wish to advertise in the *Travelhost* magazine. Appellants' advertising services, which are made known to their customers through sales personnel, include advice and counseling in advertising, the development of advertising campaigns and the preparation of advertising art work and copy. Appellants forward the advertising art work and copy to Travelhost Texas along with necessary editing instructions for printing the advertisements in the *Travelhost* magazine.

By virtue of their contracts with Travelhost Texas, appellants are obligated to purchase a minimum of 3,000 *Travelhost* magazines from Travelhost Texas each week. The price paid by the appellants is determined by the number of pages they reserve for the local section. The magazines are printed in Texas, shipped at appellants' expense by common carrier and delivered to the appellants. Appellants then deliver the magazines to merchants and businesses whose clientele the magazine targets.

## II.

█ Appellants first argue that they were denied due process of law before the Commission because the Commissioner who rendered the decision was not the Commissioner who heard the evidence. During the pendency of this matter before the Commission, Commissioner J. William Campbell, who presided at the hearing, died unexpectedly.

Section 536.080.2, RSMo 1986, provides: In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, read the full record including all the evidence, or personally consider the portions of the record cited or referred to in the arguments or briefs.

The decision of the Commission recites "Commissioner Paul R. Otto, having read the record and the briefs filed by the parties, renders the following Findings of Fact, Conclusions of Law and Decision pursuant to Section 536.080.2, RSMo 1986."

Appellants argue that the second Commissioner "could not be a fair fact finder without hearing the testimony in order to determine the credibility of witnesses." We find nothing in the record or in appellants' written or oral arguments that even remotely suggests that the credibility of witnesses is at issue here. Appellants' arguments contend no more than that they are advertising agencies that provide a complete package, including sales, creative assistance, printing and distribution of advertising through the magazine, and that their activities are exempt from use tax under Section 144.034. The Director agrees that appellants are advertising agencies, but argues that the purchase of materials, in this case the magazine, used in producing advertising by an advertising agency is a taxable event.

This is a legal, not factual dispute; the question is whether appellants' purchases of the magazines from Travelhost Texas are taxable. This is not a case of two or more witnesses contradicting one another. Under these circumstances, we think that compliance with Section 536.080 provides all of the process appellants are due here. *Dittmeier v. Missouri Real Estate Commission*, 316 S.W.2d 1, 4–5 (Mo. banc 1958); *Schrewe v. Sanders*, 498 S.W.2d 775, 778 (Mo.1973); *Phil Crowley Steel Corp. v. King*, 778 S.W.2d 800, 804 (Mo.App.1989). The point is denied.

## III.

█ We come now to the substantive issue. Section 144.610.1 imposes a compensating use tax "for the privilege of storing, using or consuming within this state any article of tangible personal property...." The use tax is calculated at the same percentage as the sales tax. A "sale at retail"

is a sale "to the purchaser, for use or consumption and not for resale in any form as tangible personal property...." Section 144.010.1(8), RSMo 1986. This definition applies to both sales and use taxes. *Southwestern Bell Telephone Co. v. Morris*, 345 S.W.2d 62, 67 (Mo. banc 1961). Exemptions granted under the sales tax apply to the use tax. *Id.* Statutes permitting exemptions from taxation are strictly construed against the taxpayer. *Missouri Public Service Co. v. Director of Revenue*, 733 S.W.2d 448, 449 (Mo. banc 1987).

Appellants take a McLuhanesque tack, arguing that the medium is the message. They say that the payment of printing costs to Travelhost Texas is "advertising sales activity in that the magazine was the medium utilized to distribute the advertising and therefore the cost of printing is not subject to Missouri use tax." Appellant relies on the definition of "advertising" promulgated by the Director pursuant to his authority under Section 144.270, RSMo 1986, to show that the medium through which the advertising is distributed is part of the service that is sold to the advertiser. The regulation states:

> Advertising is the expression of an idea created and produced for reproduction and distribution through the media, which is designed to promote sales of a particular product or service or otherwise affect consumer behavior.

12 C.S.R. 10–3.590(1)(A).

The Director contends that the purchase of the magazines by appellants from Travelhost Texas is the purchase of tangible personal property for use in producing advertising. Appellants' acquisition of the magazine is therefore taxable under the clear language of Section 144.034, the Director concludes.

Section 144.034 advises that "[t]he sales of advertising by ... advertising agencies ... shall be considered the sale of a service and not the sale of tangible personal property...." However, "[p]urchases of tangible personal property which are for use in producing advertising by [advertising agencies] ... shall be deemed to be purchases for use or consumption and not for resale...." *Id.*

■ Section 144.034 refers to two distinct activities: the statute exempts *sales* of advertising from taxation; the statute permits the collection of sales or use tax on *purchases* made by advertising agencies of tangible personal property for use in producing advertising. By clear language, the General Assembly has exempted sales of advertising from taxation. There is no claim in this case that the Director has attempted to tax sales made by appellants.

■ Also by clear language, the legislature has determined that purchases made by advertising agencies of tangible personal property for use in advertising are subject to sales/use taxation. Section 144.-010.1(8), RSMo 1986, defines a "sale at retail" as a transfer of the title to, or ownership of, tangible personal property "for use or consumption and not for resale in any form as tangible personal property...." We believe that the "purchase" language in Section 144.034 exists to pretermit claims by advertising agencies that their purchases of tangible personal property are not for their final use and consumption, are not "sales at retail" and are not taxable. Instead, Section 144.034 unambiguously provides for taxation of purchases of tangible personal property by advertising agencies.

There is a prescience in Section 144.034 not often found in the statutes. The General Assembly apparently understood that the tangible personal property used in advertising is often of insignificant value when compared to the creative services an advertising agency sells its customer. The creative service provided by an advertising agency is an idea; ideas are born in the cerebrum, but are of marketable value only if communicated. Insofar as the advertising service sold is no more than the oral communication of the idea, the medium is the spoken word and no tangible personal property is involved. However, to the extent that the idea must be communicated through a different medium—e.g., an audio tape, a video tape, or the creative arrange-

ment of ink on paper—tangible personal property is required.

■ It is no doubt possible for an advertising agency to determine the value of the tangible personal property it uses as the medium to convey its ideas and to segregate that value from the value of the services it sells. In the absence of Section 144.034, advertising agencies would be required to undertake just such bookkeeping practices and collect and pay sales tax on sales of tangible personal property to its customers. Section 144.020, RSMo 1986. However, Section 144.034 establishes different sales/use taxation rules for advertising agencies, eliminating the necessity of advertising agencies performing such bookkeeping gymnastics. Instead, Section 144.034 assumes that all sales made by advertising agencies, including the media on which its ideas are carried, are services and not subject to taxation. Apparently to compensate for the loss of sales tax revenue resulting from the advertising sales exemption, Section 144.034 requires the advertising agency to pay the sales/use tax when it purchases tangible personal property. To argue, as do appellants here, that the medium is the advertising is both to state the obvious and to misunderstand the special rules adopted by the legislature to ease the bookkeeping required of advertising agencies.

Ink and paper printed in the form of a magazine are the medium by which the creativity of appellants is carried. The magazine is purchased by appellants under contract with Travelhost Texas. The magazine is tangible personal property. Section 144.034 permits the taxation of "tangible personal property ... for use in producing advertising." Appellants' purchases of *Travelhost* magazine are subject to use tax.

In reaching this conclusion, we necessarily reject appellants' contention that purchases of the magazines are incidental to the delivery of nontaxable services and therefore not taxable. Section 144.034 provides unique rules for the sales/use taxation of advertising agencies that deplete the force of appellants' argument. Moreover, appellants' reliance on *James v. Tres*

*Computer Systems, Inc.*, 642 S.W.2d 347 (Mo. banc 1982), and *K & A Litho Process, Inc. v. Director of Revenue*, 653 S.W.2d 195 (Mo. banc 1983), is misplaced.

*Tres Computer* determined that the magnetic tape used to convey a custom—made computer program served merely as the "medium to convey the data and programs to the customer's computer." *Id.* The "essence of the transaction" was the conveyance of a service and not the purchase and sale of the tangible tape. *Tres Computer*, 642 S.W.2d at 349–350. *But see International Business Machines Corp. v. Director of Revenue*, 765 S.W.2d 611 (Mo. banc 1989) (holding that taxpayer failed in its burden of showing that non-custom computer software is not a service and that the medium by which the program is made available to the purchaser is neither the object of the sale nor taxable tangible personal property).

*K & A Litho* followed the "essence of the transaction" test established in *Tres Computer.* The Court determined that the color separations used in the lithographic process were the product of "highly skilled and technical services" and the film by which these were transported was "merely incidental to the skilled services performed by the lithographer" and did "not constitute an end product of a final and lasting nature." *K & A Litho*, 653 S.W.2d at 197.

■ These cases serve to define the difference between the taxable sale of tangible personal property and the nontaxable sale of a service. The distinction drawn by the cases is whether the tangible personal property is the object of the sale. Whether such property is the object of the sale is measured by whether it is retained by the purchaser or whether it is of no continuing use after it is employed as part of a process for which it is created. Here the magazine is the *sine qua non* of the service rendered by appellants; far from being incidental, the magazine is the purpose of appellants' purchase agreement with Travelhost Texas. The point is denied.

## IV.

Finally, appellants contend that the Director failed to "sustain the burden of

proof that appellants are obligated to pay penalties and interest" as a result of their failure to file a use tax return for the purchase of the magazines. The Director responds with a two-pronged argument. First, the Director urges that the burden is on the taxpayer to show that interest and penalties are not due. Second, he contends that appellants failed to preserve the question for review before the Commission.

■ We disagree with the Director's contention that the issue is not preserved for review. The Director's assessment of use tax in this case includes penalties. Appellants' Petitions for Review challenge the entire assessment. As the Director's own brief to this Court states, "[t]he addition of penalties and interest to assessments made by the Director became part of the assessment...." By challenging the assessment, appellants place at issue the penalties and interest that are part of that assessment.

■ Section 144.665, RSMo 1986, provides for the imposition of penalties when a taxpayer fails to file a use tax return "unless it is shown that such failure is due to reasonable cause and not the result of willful neglect, evasion, or fraudulent intent...." Appellants argue that their failure to pay the use tax here "was based on a reasonable belief that no use tax was due or owing."

Section 621.050.2, RSMo 1986, clearly states that the burden of proof in these matters lies with the taxpayer, except in circumstances not applicable here. The Commission neither made findings of fact nor pronounced conclusions of law as to appellants' motivation in failing to pay the tax. In light of the Commission's failure to consider the propriety of the Director's imposition of the penalty, we are without a sufficient factual basis to determine whether appellants' failure to file returns and pay the use tax in this case was either unreasonable or the product of willful neglect, evasion or fraudulent intent. We remand this matter to the Commission to consider the applicability of Section 144.-665. In so doing, we remind the Commission that this case presents a matter of first impression and that taxing statutes, and especially taxing statutes that impose a penalty, are strictly construed against the taxing authority. *Brown Group, Inc. v. Administrative Hearing Commission*, 649 S.W.2d 874, 881 (Mo. banc 1983).

■ The Director's assessment of interest presents a different question. Section 144.720, RSMo 1986, applies Section 144.-170, RSMo 1986, to a failure to pay use tax in a timely fashion. Section 144.170 mandates that taxes not paid when due "shall bear interest at the rate determined by section 32.065 from and after such date until paid." Irrespective of appellants' motivation for not paying the use tax due in this case, appellants assumed the risk that their interpretation of the use tax statutes would prove incorrect and that a tax would ultimately be due. The language of Section 144.170 is clear and unequivocal; interest is due if the tax is not timely paid. A taxpayer's excuse for failure to pay is irrelevant. The Director properly assessed interest against appellants.

### V.

The decision of the Commission affirming the Director's assessment of use tax and interest is affirmed. The decision of the Commission affirming the Director's assessment of penalties is reversed. The cause is remanded to the Commission for further proceedings not inconsistent with this opinion on the issue of appellants' liability for penalties under Section 144.665.

All concur.