**WESTERN BLUE PRINT CO., Respondent,**

v.

**DIRECTOR OF REVENUE, Appellant.**

**No. SC 90172.**

Supreme Court of Missouri,
En Banc.

April 20, 2010.

James R. Layton, Attorney General's Office, Jefferson City, for appellant.

William E. Quirk, Thomas W. Gray and Anthony W. Bonuchi, Polsinelli Shughart P.C., Kansas City, for respondent.

WILLIAM RAY PRICE, JR., Chief Justice.

Because the "true object" of Western Blue Print's business was the conversion of paper documents into electronic format and not the sale of compact disks ("CDs"),

the CDs it provided its customers were merely incidental to a non taxable service. This Court affirms the decision of the Administrative Hearing Commission.

## Factual and Procedural Background

Western Blue Print ("WBP") is a limited liability company with its principal office in Kansas City, Missouri. It is a professional printing and copying company. At issue in this case is its business of document automation. Document automation is the electronic scanning of paper documents onto CDs.

According to the parties' stipulation, WBP's business can be described most easily as follows: WBP's customers bring in hard copies of important documents they would like converted into electronic format. WBP scans images of those documents onto CDs. WBP then returns the original documents and the CDs to the customer. Under the terms of most customers' contracts, WBP also keeps a copy of the CDs. WBP charges its customers a fee-per-page for the documents it scans and an additional $15 for each CD it distributes.[1] Before purchasing these services, customers sign detailed contracts that explain the price break-down. WBP's customers also are given the option of requesting additional services, such as indexing of the CDs' contents into folders, conversion of the scanned documents to PDF files, or labeling of the documents to facilitate the search functions in Acrobat Reader or Windows Explorer.

In February 2006, the director of revenue ("the director") initiated an audit of WBP's sales, use, and withholding tax records for the previous three years. At the conclusion of the audit, the director assessed WBP $41,414.29 in unpaid sales tax. The amount included $35,971.62 in unpaid sales tax for the CDs WBP sold to its customers plus $5,442.67 in statutory interest for the time period in question.

In January 2007, WBP challenged the director's assessment before the Administrative Hearing Commission ("the commission"). WBP made two arguments to the commission. First, WBP argued that the "true object" of its sales was a non-taxable service, not a tangible finished product, so the CDs it provided its customers did not transform its transactions into taxable sales of personal property. Second, WBP argued that even if provision of the CDs did render its transactions taxable retail sales, they are tax-exempt "computer output" under section 144.010(10), RSMo.[2] The commission ruled in favor of WBP on both points.

The director makes two arguments on appeal. First, the director argues that the commission erred in finding that WBP's transactions were non-taxable services because the CDs, which were tangible personal property, were the "true object" of WBP's sales. Second, the director argues that the commission erred in finding that WBP's sales were exempt from taxation because the CDs did not constitute "computer output" under the statute. Analysis of the first issue is dispositive of the case.

## Jurisdiction

This Court has exclusive appellate jurisdiction over all cases involving the construction of the revenue laws of the state. Mo. Const. art. V, sec. 3.

## Analysis

### Standard of Review

This Court reviews agency determinations of tax law *de novo*. *DST Sys.*,

---

1. The $15 fee actually encompasses both the CD given to the customer and the duplicate stored by WBP.

2. All references are to RSMo 2000, as amended, unless otherwise noted.

*Inc. v. Dir. of Revenue,* 43 S.W.3d 799, 800 (Mo. banc 2001). Determinations of fact will be upheld if, after considering the entire record, they are supported by substantial evidence. *Id.* WBP has the burden of proving that its sales are nontaxable. *Branson Props. USA, L.P. v. Dir. of Revenue,* 110 S.W.3d 824, 825 (Mo. banc 2003).

### Applicable Statutes

■ Section 144.020.1(1) imposes a sales tax on "every retail sale in this state of tangible personal property." A retail sale is "any transfer made by any person engaged in business as defined herein of the ownership of, or title to, tangible personal property to the purchaser." Section 144.010.1(10) RSMo. This text has never been modified, despite a technological revolution in the way we conduct business in Missouri and across our nation.[3] As Chief Justice Blackmar noted in *Bridge Data Company,* this Court must work with the "imperfect mold" of section 144.010. *Bridge Data Company v. Director of Revenue,* 794 S.W.2d 204, 205 (Mo. banc 1990). The question before the Court is what the terms "retail sale" and "tangible personal property" mean as set out in sections 144.010.1(10) and 144.020.1(1).

### This Court's Precedent

Over the past 20 years, this Court has dealt with the scope of section 144.010.1(10) many times. The Court has developed the "true object" test to determine which types of "mixed" transactions are taxable under sections 144.010.1(1) and 144.020.1(1). This Court has held that to determine the "true object" of a transaction that involves both non-taxable services and taxable retail sales, the Court looks to the "real object the buyer seeks." *Sneary v. Director of Revenue,* 865 S.W.2d 342, 345 (Mo. banc 1993).

This Court has recognized a class of transactions in which tangible personal property "serves only as the medium of transmission for an intangible product or service." *Id.* at 349. If the tangible personal property is "merely incidental" to a non-taxable service, its existence will not transform the entire transaction into a taxable retail sale. *Id.*

The Court first discussed the "true object test" in *James v. TRES Computer Systems, Inc.,* 642 S.W.2d 347 (Mo. banc 1982). TRES Computer Systems, Inc., ("TRES") was a Texas-based corporation that sold computer software to a Missouri customer. TRES delivered software to its customers via magnetic tapes.[4] The director argued that the transfer of the tapes, which, admittedly, were tangible personal property, rendered the transactions taxable retail sales. This Court, however, concluded that the tapes were not the "ultimate object of the sale" for two reasons. First, the customers were really buying an intangible service from TRES, not tangible personal property. Even though they were provided with tapes, after the customers "translated and introduced the information into the computer ... what actually remain[ed] in the computer [wa]s intangible knowledge." *Id.* at 349. That is, what TRES's customers were truly seeking was the electronic data the tapes contained, not the tapes themselves. Therefore, "the tapes themselves were not the ultimate object of the sale." *Id.* Second, the existence of the tapes did not transform the transactions into taxable retail sales because the tapes themselves were not necessary to the

---

**3.** The current language is identical to the original language. This statute first was enacted during the fiscal crisis of 1933–1934. 1933–1934 ex. session Mo. Laws 156.

**4.** *TRES* was decided under section 144.610, RSMo 1978, but the operative phrase, "tangible personal property," has not changed.

transactions. Instead, the data and information on the tapes "could have been sent to the customers through electronic communications." *Id.*

In *K & A Litho Process, Inc. v. Director of Revenue,* 653 S.W.2d 195 (Mo. banc 1983), a lithography company received film transparencies from a third party, then separated the colors onto a sheet of film and prepared something called a color key. The color key and film were then sold to printers who created plates from them that the printers used to make photographs. Those color photographs were sold to the printers' customers, and the color key and separated film could be discarded. The director argued that K & A Litho's transactions amounted to taxable retail sales because the company sold tangible personal property (the color keys and film sheets). This Court, however, following *TRES,* held that the items of tangible personal property were not the "true object" K & A Litho's customers were seeking. Instead, what they were buying were the company's skill and experience in producing the color keys and separated films. The tangible items were merely a "segment of a larger production operation" that did not render the transactions taxable "retail sales." *K & A Litho,* 653 S.W.2d at 196.

*TRES* and *K & A Litho* are controlling here. WBP's business was the conversion of paper documents into electronic format—it scanned its customers' documents, burned the documents onto CDs, and delivered the CDs to the customers. These are non-taxable services under settled Missouri law. The CDs WBP used to transfer the data to its customers were "merely the medium of transmission." *TRES,* 642 S.W.2d at 349. That WBP used CDs as a delivery vehicle for its customers' electronic data was incidental to the services WBP provided. The fact that WBP used CDs instead of delivering its customers' data via the Internet or some other means did not render its business transactions "retail sales" subject to sales tax.[5]

The CDs WBP used, like the tapes TRES used, were mere conduits for the data. The CDs WBP used, like the tapes TRES used, can be discarded after the data is transmitted to the customers' computers. Similar to *TRES,* what WBP's customers really were buying was the conversion of their paper documents into electronic format. "[T]ransfer of tangible personal property under these circumstances is merely incidental to the purchase of the intangible . . . information stored on the [media]." *TRES,* 642 S.W.2d at 349. The intangible services provided by WBP were the "essence of the transaction[s]." *Sneary,* 865 S.W.2d at 342. And, like in *K & A Litho,* the physical CDs provided by WBP were only a "segment of a larger production operation." *Id.* at 196.

### The Director's Argument

The director argues that the deliberate choice on the part of WBP's clients to receive their documents on CDs transforms WBP's transactions into taxable retail sales. The director relies on two primary cases in which this Court held that the "mixed" transactions at issue were in fact taxable retail sales. Neither case is persuasive on the facts here.

The first case is a 1990 case in which a company produced television commercials and videotapes for a variety of purposes, including accident reconstruction, depositions, and instructional seminars. The company argued that its services were not taxable retail sales. *Gammaitoni v. Director of Revenue,* 786 S.W.2d 126 (Mo.

5. The director did not argue that the physical CDs themselves were taxable, so that issue is not before this Court.

banc 1990). The Court explained that the transactions at issue were taxable sales of tangible personal property because the finished videotapes themselves were the objects of the transactions. *Id.* at 129. The facts of *Gammaitoni* are the exact inverse of the facts before us today. In *Gammaitoni*, it was the services rendered by the company (manufacturing the videotapes) that were incidental to the sale of tangible personal property (the physical videotapes). *Id.* at 130. In this case, by contrast, the physical CDs provided to WBP's customers were incidental to the non-taxable services for which the customers were contracting.

The second case is *Universal Images v. Department of Revenue*, 608 S.W.2d 417 (Mo. banc 1980). In *Universal Images*, a Missouri corporation ("Universal") produced short advertisements that movie theaters ran as previews. Businesses wishing to create an advertisement for this purpose contracted with Universal for the use of its moving picture film and sound accompaniment. This Court held that Universal's transactions were taxable retail sales of personal property because its clients were purchasing the films themselves, which were "finished products." *TRES*, 642 S.W.2d at 350 (discussing *Universal Images*). In contrast, WBP's customers were not buying the physical CDs as "finished products." They were buying the conversion of their data into electronic format. As discussed, the CDs provided by WBP were the medium of transmission incidental to the purchase of that service.

### Conclusion:

This Court affirms the decision of the Administrative Hearing Commission.

All concur.