**Harry J. LLOYD and Patricia A. Lloyd, Appellants,**

v.

**DIRECTOR OF REVENUE, Respondent.**

No. 75179.

Supreme Court of Missouri, En Banc.

April 20, 1993.

Rehearing Denied May 25, 1993.

**520**

Lawrence M. Berkowitz, Jason A. Reschly, Don M. Downing, Sandra J. Wunderlich, Kansas City, for appellants.

William L. Webster, Atty. Gen., Carole Lewis Iles, Asst. Atty. Gen., Curtis Thompson, Sp. Asst. Atty. Gen., Jefferson City, for respondent.

HOLSTEIN, Judge.

In 1987, 1988 and 1989 Harry J. Lloyd and Patricia A. Lloyd filed Missouri individual income tax returns in which they apportioned income taxable to them as a result of the activity of five S corporations.[1] Following a 1990 audit of those tax returns, the apportionment was disallowed and a notice of deficiency was issued. The Lloyds protested the director of revenue's decision, but to no avail. The Lloyds then deposited the deficiency with the director and sought review of the decision before the circuit court of Cole County. § 143.-841.5, RSMo Supp.1992.[2] The Lloyds appealed the circuit court's denial of relief. This Court has jurisdiction of the appeal because the case involves the construction of revenue laws. Mo. Const. art. V, § 3. The judgment is affirmed in part and reversed in part.

The Lloyds moved to Missouri in 1987 and have been residents here since that time. They claim that a primary purpose for their move here was their reading of Missouri's apportionment law and their perception that they would have lower state income taxes in Missouri. As they understood §§ 143.441 and 143.451, every corporation, including S corporations, had the right to apportion income if part of the corporate income was from non-Missouri sources. The income of their corporations had been attributable to sources both in Missouri and elsewhere. They argue here that (1) they had both a constitutional and statutory right to reduce their individual income by an apportionment formula based upon income from S corporations attributable to non-Missouri sources, (2) the court should not apply any decision to deny the apportionment of S corporation income in prior tax years, and (3) the assessment of penalties is not justified under § 143.751.

I.

In *Wolff v. Director of Revenue*, 791 S.W.2d 390 (Mo. banc 1990), this Court decided the precise issue presented in the first point adversely to the Lloyds. There, four resident shareholders of an S corporation sought refunds for taxes paid on undistributed income of an S corporation. The Court reviewed the language of §§ 143.411, 143.451, and 143.471. It concluded that an S corporation is treated as a partnership for income tax purposes, not as

---

1. The term "S corporation" is defined in 26 U.S.C. 1361(a)(1).

2. Subsequent citations to statutes are to RSMo 1986, unless specified otherwise.

a corporation. The net income of a partnership is treated as income of the individual partners. Missouri's policy is to tax the entire income of individuals, subject to credit for income tax paid to other states. However, Missouri has opted for a different policy on taxing corporations, taxing only income attributable to Missouri. The apportionment provisions of § 143.451.2 are only designed to apply to corporate taxpayers. S corporations are exempted from corporate income taxes. § 143.471.1. "It follows that there is to be no apportionment of income of resident S shareholders, just as there is no apportionment of income of resident partners." 791 S.W.2d at 392.

### A.

■ Nevertheless, the Lloyds argue that the plain and ordinary meaning of § 143.441.1 defines corporation as "every corporation" and includes S corporations. They further argue that § 143.451.2 gives every corporation, including S corporations, the right to apportion income. However, the argument fails to take into account the real question in this case; that is, whether individual shareholders of an S corporation are entitled to apportion individual income tax to the extent that those shareholders have income from an S corporation doing business in interstate commerce.

Sections 143.441.1 and 143.451, read in isolation, are not so unambiguous as to not require looking at them *in pari materia* with surrounding sections enacted at the same time. A plain meaning argument focusing solely on those two sections must fail.

Section 143.451 provides in part:

1. *Missouri taxable income* of a *corporation* shall include all income derived from sources within Missouri.

2. A corporation described in subdivision (1) of subsection 1 of section 143.441 shall include in *its Missouri taxable income* all income from sources within this state. (Emphasis added).

The statute goes on to describe the single factor formula for apportioning "interstate income of a *corporation having Missouri taxable income.*" (Emphasis added). The

"Missouri taxable income" of a corporation is not defined in §§ 143.441 or 143.451. One must look elsewhere in the statutes to determine all of the elements of a corporation's Missouri taxable income of which the apportionment formula is only a part.

Section 143.431 provides the entire formula for calculating Missouri taxable income of a corporation. It provides that "income of a corporation *taxable under sections 143.011 to 143.996* shall be so much of its federal taxable income [for a given year] ... as is derived from sources within Missouri as provided in § 143.451." (Emphasis added). Thus, § 143.451 is only part of the total formula for determining Missouri taxable income of a corporation. The statute which provides the entire formula, § 143.431, only applies to a "corporation taxable under sections 143.011 to 143.996." S corporations are exempt from the Missouri corporate income tax. § 143.471.1. Reading §§ 143.441.1 and 143.451.2 in conjunction with §§ 143.431 and 143.471 removes all doubt as to whether S corporations fall within the category of a "corporation having Missouri taxable income." Because S corporations are not corporations taxable under chapter 143, they are not entitled to apportionment.

In addition, Missouri resident shareholders are not entitled to apportion their individual income. As stated in *Wolff,* nothing in the statutes gives individual taxpayers who are shareholders of S corporations the right to apportion the income attributable to them as a result of the activities of S corporations.

### B.

Appellants also argue that the legislative history confirms that S corporations have a right to apportion. Again, the critical question here is whether individuals to whom income is attributable due to the activity of an S corporation have a right to apportion that individual income based on the non-Missouri sources of the corporation's income. The legislative history cited by the appellants fails to disclose any compelling evidence that the legislature meant something different than what is disclosed

by a contextual reading of the statutory language previously noted. Because the meaning of the statutes is made clear by reading all the statutes in context, there is no need to look to legislative history for further illumination.

Even assuming one resorts to the legislative history advanced by the appellants, the conclusion is the same. Before enactment of § 143.471, every corporation's income was subject to the same Missouri corporation income tax. §§ 143.030 and 143.040, RSMo 1969. Both S and C corporations were entitled to apportion income under the single factor formula. In 1967 the three factor apportionment formula became permissible when Missouri adopted the Multistate Tax Compact. *See* § 32.200. Because S corporations were then "subject to an income tax" by Missouri, they were given the benefit of apportionment under either formula. In 1972 S.B. 549 codified the current version of § 143.431 and the single factor formula in § 143.451. At the same time, S corporations were exempted from Missouri income tax by § 143.471. Due to revisions in federal law in 1982, the legislature again modified § 143.471 in 1982 to require resident shareholders of S corporations to determine the modification and pro rata share of their income by applying provisions applicable to resident partners. § 143.411. and .2. Appellants argue that this history demonstrates that when the words "every corporation" were reenacted in § 143.451 in 1972, that was the expression of a legislative desire to extend apportionment to S corporations, and the subsequent change in 1982 was merely a technical reporting change. Similar to its plain meaning argument, the legislative history argument falls short because it wholly ignores language of the same 1972 act making apportionment applicable only to a "corporation taxable under sections 143.011 to 143.996." § 143.431. After 1972, S corporations no longer had taxable income under chapter 143.

## C.

■ The Lloyds also claim that the refusal to allow them to apportion their income attributable to the activities of an S corporation violates both the United States and Missouri Constitutions. Again, *Wolff v. Director of Revenue* addresses that claim as follows: "The short answer to all of these [claims of constitutional violations] is that the corporation has voluntarily elected to assume S corporation status. It could have elected to be taxed as other corporations are, but it made use of a choice expressly authorized by statute. It cannot have the benefits of the S election without the burdens." 791 S.W.2d at 392. The same may be said of appellants in this case. Because business corporations are designed exclusively to engage in commerce and individuals are not, the state has a rational basis for taxing individual income on a different basis than corporate income; thus, there is no violation of equal protection. Because the income of all individuals, whether it be the income as a shareholder of an S corporation or otherwise, is taxed exactly the same, there is no violation of the "uniformity clause" of Missouri Constitution article V, § 3. The tax here involves only the tax on individual income. These individuals are residents of Missouri. They may be taxed on their entire income, regardless of where the income was earned, without offending the Commerce Clause or the Due Process Clause of the 14th Amendment. *Lawrence v. State Tax Comm'n of the State of Mississippi*, 286 U.S. 276, 52 S.Ct. 556, 76 L.Ed. 1102 (1932).

## II.

■ The Lloyds further assert that the denial of their claim to apportion income was unexpected within the meaning of § 143.903, RSMo Supp. 1990; therefore, this decision should not have retroactive effect. Section 143.903.1 provides that an unexpected decision requiring assessment of a tax shall only apply for periods after the most recently ended tax period. Section 143.903.2 defines an unexpected decision to mean "that a reasonable person would not have expected the decision or order based on prior law, previous policy or regulation of the department of revenue." The Lloyds claim this decision was unex-

pected because they relied on the definition of "every corporation" to include S corporations and, prior to the *Wolff* decision, there had been no prior cases denying apportionment to S corporations.

The essence of appellants' argument is that if a taxpayer devises a rational argument supporting a particular statutory construction, and the taxpayer relies on the construction to reduce tax liability, a decision against the taxpayer is unexpected. That argument is not consistent with the language of § 143.903 or the legislative purpose behind enactment of the statute. The section must be considered against the backdrop of circumstances preceding its enactment. In the year prior to the 1990 legislative session, two cases of this Court were decided that could not have been reasonably expected based on "prior law, previous policy or regulation of the department of revenue."

In *Hackman v. Director of Revenue,* 771 S.W.2d 77 (Mo. banc 1989), statutes had been enacted that specifically exempted state public retirement benefits from income taxation. §§ 70.755, 86.190, 86.353, 86.493, 87.365, 104.250, 104.540 and 169.-587. However, federal military retirement benefits had been subject to income tax. The state statutes were held to violate principles of intergovernmental tax immunity by favoring retired state and local government employees, and thus federal retiree taxpayers were entitled to a refund. 771 S.W.2d at 80, 81.

The second case was *Hearst Corp. v. Director of Revenue,* 779 S.W.2d 557 (Mo. banc 1989). In that case, *Hearst* had filed an application for a use tax refund. Prior to *Hearst,* the director had issued regulations exempting newspapers from sales taxes. Notwithstanding those regulations, the Court held that newspapers were not exempt from either sales taxes or use taxes because such regulations were beyond the scope of the statute and the authority of the director of revenue. 779 S.W.2d at 559.

*Hearst* and *Hackman* involved situations where a statute, regulation or previous case ruling *clearly* established an expectation relied on by both the taxpayer and the

state that a particular tax or exemption was or was not permissible. In the wake of these two cases came the enactment of § 143.903 in 1990. Unquestionably the enactment was a legislative response to the far reaching impact of those two decisions, which overruled or invalidated a prior case, regulation or statute relied on by the state or the taxpayer in their fiscal planning. These cases then provide the paradigm for when § 143.903 is applicable.

■ The legislature did not intend to declare every decision unexpected merely because the director of revenue, an administrative law judge or a court construed a statute less favorably to the taxpayer than the taxpayer anticipated. Implicit in the statute is that a decision is unexpected if the decision overrules a prior case or invalidates a previous statute, regulation or policy of the director of revenue *and* the decision was not reasonably foreseeable. In this case and in *Wolff* the Court has merely construed various provisions of chapter 143. None of those provisions have been declared invalid. No prior law, ruling, regulation or policy of a court, the administrative hearing commission or the director of revenue has been overruled. Section 143.-903 is inapplicable here.

Appellants also argue that equitable principles should be applied so as to avoid injustice or hardship of assessing taxes in years prior to 1990. The Lloyds cite a number of cases involving retroactive application of judicial decisions. However, none of those cases deal with the assessment of deficiencies for income tax.

Assessment of a tax deficiency is always harsh and often inequitable. *Community Federal S & L v. Director of Revenue,* 796 S.W.2d 883, 886 (Mo. banc 1990). However, the legislature has determined the time within which a deficiency for the payment of income taxes may be assessed. "Except as otherwise provided in this section and section 143.721, a notice of deficiency shall be mailed to the taxpayer within three years after the return is filed." § 143.711. The appellants cite no provision in §§ 143.-711 or 143.721 which justifies a shortening of the period of limitation on the assess-

ment of the deficiency. The common law and equitable principles must give way to the legislative determination on this issue.

### III.

█ Finally, the Lloyds argue that the penalty was inappropriate because they did not negligently or intentionally disregard rules and regulations. *See § 143.751.1.* The director's brief points out that the burden of proof is on the Lloyds to show the penalty for negligence should not be assessed. *§ 143.661.* To determine whether S corporations were entitled to apportion income involves the interplay of several statutory sections that individually are less than absolutely clear. When the Lloyds made their decision to apportion income, they took a calculated risk that the statutes would ultimately be favorably construed. But there was a total absence of negligence or an intentional violation of any rule or regulation of the department of revenue. The appellants simply attempted to reduce income by apportionment. The Court is satisfied that their deductions were based on a good faith, albeit wrong, construction of the statutes. There was no attempt to hide income and no failure to report the income of the corporations. Under the circumstances, it cannot be said that the failure to pay was the result of negligence or an intentional disregard of rules and regulations.

### CONCLUSION

The judgment is affirmed except that portion denying a refund of penalties. The director of revenue is ordered to refund the deposit of amounts assessed as penalties.

ROBERTSON, C.J., COVINGTON and LIMBAUGH, JJ., and CRANE, Special J., concur.

PRICE, J., concurs in part and dissents in part in separate opinion filed.

THOMAS, J., concurs in opinion of PRICE, J.

BENTON, J., not sitting.

PRICE, Judge, concurring in part and dissenting in part.

I dissent from that portion of the majority opinion holding that the Lloyds should not enjoy the protection against an "unexpected decision" granted Missouri taxpayers by § 143.903. I concur with the majority opinion in all other respects.

While the majority resorts to legislative history to interpret § 143.903, I do not believe any ambiguity exists. The statute defines "unexpected" as "a reasonable person would not have expected the decision or order based on prior law, previous policy or regulations of the department of revenue." The word "expect" has been defined to mean that an individual realizes or should realize "a strong probability the consequences in question would result." *Farm Bureau Town and Country Ins. v. Turnbo,* 740 S.W.2d 232, 236 (Mo.App. 1987); *City of Carter Lake v. Aetna Cas. and Sur.,* 604 F.2d 1052, 1058 (8th Cir. 1979).

I believe the majority misreads § 143.903 in requiring that the taxpayers show that the decision was *unexpected.* Instead, the statute by its plain terms defines "unexpected" only to require a showing that the decision was *not expected.* Had the legislature intended the result reached by the majority, it would have deleted the bracketed language below and stated:

2. The provisions of this section shall apply only to final decisions by or orders of a court of competent jurisdiction or the administrative hearing commission which are rendered after October 1, 1990, and which are determined by the court or the administrative hearing commission rendering the decision, or subsequently by a lower court or the administrative hearing commission, to be unexpected[. For the purposes of this section the term "unexpected" shall mean that a reasonable person would not have expected the decision or order] based on prior law, previous policy or regulation of the department of revenue.

The inclusion of the bracketed language, however, mandates a different interpretation. Thus, contrary to the position taken

by the majority, the Lloyds are entitled to the protection of § 143.903 unless it is shown that at the time of filing their returns a reasonable person should have realized there was a "strong probability" of the decision herein, based upon the prior law.

On the record below, the Lloyds clearly established that this decision was not expected when they filed. First, *Wolff v. Director of Revenue*, 791 S.W.2d 390 (Mo. banc 1990), had not been decided at that time. Second, the Lloyds point out that § 143.451.2, the statute providing for the single-factor formula for apportioning income, specifically refers to corporations described in § 143.441.1(1). That statute applies by its express terms to "Every corporation". This would ordinarily be understood to include subchapter S corporations. Thus, the Lloyds had an objective and reasonable basis, grounded in statute, to justify their conclusion. Finally, the Lloyds showed that both prior to the *Wolff* decision and while the *Wolff* case was pending, the Department of Revenue reviewed returns filed by the Lloyds and utilized the same apportionment method they used in calculating refunds. If the department had *expected* a contrary treatment, they would have acted accordingly.

The only responsive evidence put forward by the Department of Revenue was that it had issued notices of adjustments to the Wolffs regarding the same issue on November 13, 1987. The department implies that the Lloyds should, therefore, have expected similar treatment. The department's argument fails, however, because it did not follow the same procedure with the Lloyds as it did with the Wolffs. Had the department itself acted similarly with all known S corporation taxpayers who apportioned income, all would have been put on notice regarding their expectations. By only proceeding against the Wolffs, and not against other similarly situated taxpayers, the department clearly established its own determination that this was a test case and not one with an expected result.

For corporations, individuals, and the state itself, the predictability of tax liability or tax revenues is crucially important. The effect of retroactive application of interpretations of our tax laws can create significant hardships and disruptions. By enacting § 143.903, the Missouri legislature attempted to assist all parties by removing from them the risk of decisions that would not have been expected. While the Lloyds may not escape the future consequences of the *Wolff* decision, § 143.903 should protect them from the retroactive application of a first impression decision of this Court that they did not expect when they filed their return.