Richard R. SNEARY, d/b/a Sneary
Architectural Illustration,
Appellant,

v.

DIRECTOR OF REVENUE, Respondent.

No. 75530.

Supreme Court of Missouri,
En Banc.

Nov. 23, 1993.

Rehearing Denied Dec. 21, 1993.

G. William Quatman, Randal L. Schultz, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gretchen Garrison Hunter, Asst. Atty. Gen., Jefferson City, for respondent.

John P. Jennings, Jr., Kansas City, for amicus curiae AIA.

COVINGTON, Chief Justice.

This is an appeal from the decision of the administrative hearing commission. Richard R. Sneary, appellant, is an architect licensed by the state of Missouri, doing business as Sneary Architectural Illustration. The director of revenue, respondent, assessed sales tax on Sneary's sales of architectural illustrations that Sneary prepared and sold to architectural firms from May 14, 1987, through February 28, 1991. Sneary challenged the assessment, arguing that the true object of the transactions was the sale of his professional services rather than the illustrations themselves. The administrative hearing commission upheld the assessment, concluding that the transactions involved the sale of tangible personal property and that the assessment was not unexpected. That decision is affirmed.

Architects traditionally prepared architectural illustrations as part of their professional services. Today, however, specialists often prepare these illustrations. Architectural firms either employ specialists in-house or contract the project to third parties such as Sneary.

Architectural firms bring Sneary rough ideas, sketches, and photographs that Sneary refines into three-dimensional illustrations. Sneary often receives little guidance; therefore, he must add details and initiate changes. Sneary presents preliminary sketches for review, then refines them according to client input. The presentation and refinement process may occur several times during a single project, with each sketch becoming more refined. After the design is final, Sneary prepares an illustration in ink and watercolor.

Sneary entered into letter agreements to prepare the illustrations, with price based upon an estimated time to complete an illustration. The price was either set at a lump sum or based upon an hourly rate, not to exceed a lump sum. A representative letter agreement reads:

> I am prepared to ... produce one aerial and one spectator view, ink and watercolor, *illustration for the [specified] project for* an amount not-to-exceed $4,500.00 plus ... expenses....
>
> ... A finished ink drawing will be submitted for your approval prior to beginning the finished color work on each illustration. The illustrations will be based on a 15″ × 22″ format with a maximum finished size of 1″ less.

Upon completion, Sneary calculated his labor costs on an hourly basis. If total labor costs exceeded the contract price, he absorbed the difference. Except in one instance, none of the billing statements introduced into evidence specified the number of hours that Sneary expended on an illustration. A representative billing statement requested payment for "one 20″ × 12″ ink & watercolor illustration of [specified project] on a 24″ × 18″ board with a mat." Sneary introduced testimony that when he did not produce a final illustration because of a project change or termination, he would be paid for his work to that point. Each of the transactions in the present case, however, included delivery of a final illustration.

After payment was made, the client took possession of the illustration. The client did not have the right to possess any of the interim drawings. Sneary's clients used the illustrations to support or promote their efforts to obtain contracts for building projects.

## The Sales Tax

■ The primary issue is whether the sales by Sneary to his clients constitute the sales of tangible personal property within the meaning of § 144.020, RSMo 1986, or whether, as Sneary asserts, the transactions are nontaxable performances of a service. This Court will affirm the commission's decision upholding the director's assessment of sales tax if it is:

> [A]uthorized by law and supported by competent and substantial evidence upon the whole record, ... and if the approval or disapproval of the exercise of authority in question by the administrative hearing commission does not create a result or results clearly contrary to that which the court concludes were the reasonable expectations of the general assembly at the time such authority was delegated to the agency.

§ 621.193, RSMo 1986. In correcting errors of law, this Court will exercise its independent judgment. *Daily Record Co. v. James*, 629 S.W.2d 348 (Mo. banc 1982). Taxing statutes and regulations must be strictly construed in favor of the taxpayer. *St. Louis Country Club v. Admin. Hearing Comm'n*, 657 S.W.2d 614 (Mo. banc 1983).

Section 144.020 imposes a sales tax upon every retail sale in Missouri of tangible personal property. § 144.020.1(1), RSMo 1986. Sale at retail is defined in § 144.010.1(8) as "any transfer made by any person engaged in business ... of the ownership of, or title to, tangible personal property to the purchaser, for use or consumption ... for a valuable consideration." The sales tax is imposed on gross receipts: "[T]he total amount of the sales price of the sales at retail including any

services ... that are part of such sales." § 144.010.1(3), RSMo Supp.1992.

The transfer of ownership of the tangible architectural illustrations in this case for valuable consideration falls in the literal sense within the sales tax statute. This Court has recognized, however, that the "true object" or "essence of the transaction" determines whether to treat a transaction as a taxable transfer of tangible personal property or the nontaxable performance of a service. The test focuses on the essentials of the transaction to determine the real object the buyer seeks. *James v. TRES Computer Sys., Inc.*, 642 S.W.2d 347 (Mo. banc 1982); *K & A Litho Process, Inc. v. Director of Revenue*, 653 S.W.2d 195 (Mo. banc 1983). Under the test, this Court has recognized a class of transactions in which tangible personal property serves exclusively as the medium of transmission for an intangible product or service. The intangible component is the true object of the sale; the tangible component is of little utility and may even be discarded after the buyer has used it to obtain access to the intangible component. In such transactions, the intangible object of the sale does not assume the taxable character of the tangible medium, *TRES Computer*, 642 S.W.2d at 349, or the tangible medium is inconsequential and nontaxable, *K & A Litho*, 653 S.W.2d at 197.

The decision in this case is dictated by evidence that reflects that the architectural illustrations are the objects of the transactions between Sneary and the architectural firms. The evidence shows that the architectural firms retained Sneary to provide illustrations. No mention was made of other architectural services. The architectural firm's purpose was to obtain an attractive example of what the firm could do for a proposed project so as to persuade a project owner to use the firm's services. Sneary's billings evidence that the object of the transactions were the illustrations. Both the letter agreements and billing statements describe transfers of the illustrations and detail their specific sizes and layouts, reflecting that the buyers placed importance on the tangible illustrations. The fact that Sneary used ink and watercolor only on the final illustrations further reflects that the clients placed importance on the illustrations. Testimony in the record also reveals that Sneary's clients desired and used the illustrations. Sneary's contracts involved the sale of tangible personal property subject to the sales tax.

Sneary contends, nevertheless, that the assessed transactions are within the excluded class because he uses his significant architectural talents and training to interact with the rest of the architectural team to produce a definitive expression of their design concepts in his final illustration. He argues that the architectural illustrations were not the object of the transactions; they merely served as a medium to convey architectural information to clients. Since books, video tapes, audio tapes, maps, and mass produced computer programs [1] can serve as a medium to convey information, yet be subject to the sales tax, Sneary must distinguish his transactions to avoid the sales tax. He seeks to distinguish the sales in his case by reliance on *James v. TRES Computer Service., Inc.*, 642 S.W.2d 347 (Mo. banc 1982), and *K & A Litho Process, Inc. v. Director of Revenue*, 653 S.W.2d 195 (Mo. banc 1983).

Neither *TRES Computer* nor *K & A Litho* supports Sneary's position. *TRES Computer* involved the sale of $135,000 worth of custom data and computer programing (program) sold on computer tapes worth fifty dollars. The parties stipulated that the program itself was intangible, but that the tapes were tangible personal property. The tapes were subject to the sales tax. The issue was whether the program lost its intangible nature when transferred to and sold on the tapes. If the program lost its intangible nature, then the seller was liable for sales tax on the com-

---

1. *International Business Machines Corp. v. Director of Revenue*, 765 S.W.2d 611 (Mo. banc 1989) (holding that standardized computer programs sold through a software directory were subject to the sales tax). Cf. *James v. TRES Computer Service, Inc.*, 642 S.W.2d 347 (Mo. banc 1982) (holding that an intangible, customized computer program did not lose its intangible nature when transferred to and sold on computer tapes; thus, the sales tax applied only to the tapes and not the program itself).

bined value of the tapes and the program. This Court held that the program did not lose its intangible nature; therefore, the taxpayer was liable for sales tax only on the fifty dollar tapes.

In *TRES Computer* this Court emphasized that the intangible program was the ultimate object of the sale, not the tangible tapes; the tapes served merely as a conduit to convey the program, and once the program was transferred to a computer, the tapes were no longer of value to the buyer. The program was not sold as a finished product since the buyer had to enter it into a computer where it would be translated into computer language. Finally, the seller could have transferred the program without the tapes, via telephone lines, thereby entirely avoiding the sales tax.

A number of the circumstances governing the *TRES Computer* rationale are distinct from those in the present case. First, in *TRES Computer* the intangible program was the ultimate object of the sale and the customers placed no value on the tangible tapes. Here, in contrast, Sneary's clients desired and used the tangible architectural illustrations. Second, although the illustrations contain architectural information, they do not act as disposable conduits for that information as did the computer tapes. The architectural information is not transferred from the illustrations, nor do the clients dispose of the illustrations after receiving the information. Instead, the information the illustrations provide remains as Sneary's clients use the illustrations to promote projects. Third, unlike the computer program, the illustrations are a finished product. Whereas the computer program had to be transferred from the tapes into a computer and translated into computer language, the illustrations need no further processing to be utilized by their purchasers. Finally, unlike the program in *TRES Computer,* there is no evidence that the architectural information is separable from the illustrations and that Sneary could have transferred that information to his client in an intangible form that would have avoided the sales tax.

In *K & A Litho,* the taxpayer received film transparencies from its customers and, by a highly technical and scientific process, separated the colors onto a sheet of film. The taxpayer then prepared a color key. A printer used the taxpayer's color-separated film and color key in preparing its printing plates. Once the printer prepared the plates, the separated film and color key served no further purpose and were usually discarded. This Court found that, under *TRES Computer,* the transactions were not subject to the sales tax. The Court noted that the film served only as a medium to convey the transparency colors and was of no value after having done so. The color separated film and color keys were the product of highly technical and skilled services, that were themselves the object of the sale, the separated film and color key being merely an incidental and unfinished product. This Court distinguished the taxpayer's separated film, which consisted of colored dots, from the motion picture film found subject to the sales tax in *Universal Images, Inc. v. Department of Revenue,* 608 S.W.2d 417 (Mo. 1980). A motion picture, unlike the separated film, was a "final, finished product" which the buyer could use in the form sold. *K & A Litho,* 653 S.W.2d at 197.

The transactions in the present case are distinguishable from those in *K & A Litho.* The disposable medium and object of the sale factors are addressed and distinguished above. The level of technical or scientific skill required to produce a product may be relevant in determining whether the services constitute the true object of the sale. The level of skill required to produce a product cannot otherwise cause a sale of tangible personal property to be exempted from the sales tax. Although Sneary's illustrations require architectural skill to produce, the objects of the sale, as discussed, were the illustrations themselves. Finally, Sneary's architectural illustrations more closely resemble *Universal's* finished motion picture, which was used as sold, than *K & A Litho's* separated film and color key, which had no use except to transfer colors in the next stage of the printing process. As stated, the illustrations' form does not change after they are sold; Sneary's clients desire and use the

illustrations in the form sold. *K & A Litho* does not support Sneary's contention.

 Sneary also argues that architectural illustration is an integral part of the practice of architecture and that architecture is a service-oriented industry exempt from sales tax. He cites 12 CSR 10–3.070(1), which states that "[s]ervice-oriented industries are generally providing only services which are not subject to the sales tax." That regulation goes on to state, however, that "[s]hould a service industry engage in business themselves as retailers selling tangible personal property, they ... are subject to the sales tax on their sales." 12 CSR 10–3.070(3). Clearly, then, service-oriented industries are not categorically exempt from sales tax. When a service-oriented business sells tangible personal property, as does Sneary, the sale is subject to sales tax.

Sneary asserts further that Missouri law recognizes a distinction between transactions involving architects and transaction involving manufacturers of goods. In support, Sneary cites *Chubb Group of Insurance Cos. v. C.F. Murphy & Associates., Inc.*, 656 S.W.2d 766 (Mo.App.1983), in which plaintiffs sued an architect, among others, under a theory of strict products liability for the collapse of an arena roof. The court of appeals, in discussing the policy underlying strict products liability, distinguished architects from those who mass produce and sell goods, noting that the "relationship between architect and client is markedly different [from that of consumer and mass producer].... Architects and clients normally enjoy a one-to-one relationship and communicate fairly extensively during the course of the relationship." *Id.* at 780 (quoting *City of Mounds View v. Walijarvi*, 263 N.W.2d 420, 425 (Minn.1978)). *Chubb Group* does not address the issue presented in this case. The policy considerations underlying strict products liability are irrelevant in the sales tax context.

Appellant also cites *Blaske v. Smith & Entzeroth, Inc.*, 821 S.W.2d 822 (Mo. banc 1991), which involved an equal protection claim challenging different statutes of limitations for architects and materialmen. This Court held that a rational basis existed to distinguish architects from materialmen when establishing statutes of limitations due to the unique and complex problems that architects face in every project, contrasted with materialmen who typically mass produce standardized products.

*Blaske* does not address the issue at bar. Whether a rational basis exists to distinguish between architects and materialmen in setting different statutes of limitations involves considerations altogether inapplicable to the sales tax statute, under which sales of tangible personal property are subject to the sales tax regardless of the unique or complex problems one faces in producing the property sold.

 Sneary repeats his argument that the architectural illustrations are not taxable as tangible personal property because the illustrations are merely incidental to the skilled service his clients purchase. In this instance, he cites a Georgia court of appeals case, *Hawes v. Dimension, Inc.*, 122 Ga.App. 190, 176 S.E.2d 602 (1970), in which the court reversed an assessment of sales tax on the transfer of architectural illustrations. *Hawes* was decided on a Georgia sales tax statute that exempts "professional, insurance, or personal service transactions which involve sales as inconsequential elements for which no separate charges are made." *Id.* 176 S.E.2d at 603; Ga.Code Ann. § 48–8–3(22) (1982). The Georgia court found that the architect engaged in the business of supplying personal and professional services by taking his clients' ideas and concepts and transforming them into illustrations. The court noted that the illustrations' material components represented only 3% to 4% of the total price charged, the balance being charged for the service provided. *Id.* at 604.

 Missouri does not have a statutory exemption similar to Georgia's. As noted, § 144.010.1(3) defines "gross receipts," against which the sales tax is imposed, as the "total amount of the sale price of the sales at retail *including any services ... that are part of such sales.*" § 144.010.1(3), RSMo Supp.1992 (emphasis added). Furthermore, contrary to Georgia's exemption, this Court has repeatedly held that Missouri's sales tax scheme does not contain a de minimis exemp-

tion for sales of tangible personal property where services dominate and material components constitute only a small percentage of the total sales price. *Kilbane v. Director of Revenue*, 544 S.W.2d 9, 12 (Mo. banc 1976) ("We find nothing in the Sales Tax Act which indicates that whether sales tax is due depends on the respective percentages of labor and materials in the product sold."). *Odorite of America v. Director of Revenue*, 713 S.W.2d 833, 839 (Mo. banc 1986) ("This argument that sales tax due depends on the respective percentages of labor and material sold was rejected by this Court in *Kilbane....*"); *Universal Images v. Missouri Dep't of Revenue*, 608 S.W.2d 417 (Mo. banc 1980) (applying *Kilbane* to Missouri's use tax). The fact that Sneary's production of architectural illustrations demands substantially more labor than materials is not, therefore, a consideration when deciding whether the illustrations are tangible personal property under the sales tax statute.

None of Sneary's arguments is sufficient to persuade the Court that the architectural illustrations are not the object of the sale. In the words of *Travelhost of Ozark Mountain Country v. Director of Revenue*, 785 S.W.2d 541, 545 (Mo. banc 1990), the illustration is the *sine qua non* of the service rendered by Sneary. It is the purpose of the agreements with the clients. The commission's decision upholding the director's assessment of sales tax is affirmed.

### An Expected or Unexpected Decision

Sneary contends in the alternative that, if the sales at issue constitute sales of tangible personal property subject to the sales tax, the result is unexpected under § 143.903, RSMo Supp.1993; therefore, the director cannot assess sales tax.

■ Section 143.903(1) provides that an unexpected decision by a court or by the administrative hearing commission that imposes a tax credit, refund, or additional assessment shall apply only prospectively, beginning after the most recent tax period. Section 143.903(2) defines "unexpected" to mean that a "reasonable person would not have expected the decision or order based on prior law, previous policy or regulation of the

department of revenue." This Court recently interpreted the statute in *Lloyd v. Director of Revenue*, 851 S.W.2d 519 (Mo. banc 1993):

> The legislature did not intend to declare every decision unexpected merely because the director of revenue, an administrative law judge or a court construed a statute less favorably to the taxpayer than the taxpayer anticipated. Implicit in the statute is that a decision is unexpected if the decision overrules a prior case or invalidates a previous statute, regulation or policy of the director of revenue *and* the decision was not reasonably foreseeable.

*Id.* at 523. The statute does not, therefore, preclude assessment of sales tax based upon a reasonable extension of the law or a reasonable application of the law to areas not previously specifically addressed.

■ The assessment of sales tax to Sneary's architectural illustrations is not unexpected. Assessing sales tax on these transactions does not overrule a prior case or invalidate a previous statute or regulation. Sneary argues that it was the previous policy of the director not to assess tax on architectural services. Sales tax in this case, however, is assessed on Sneary's sale of tangible personal property. The director established its policy regarding architectural illustrations in 1985 when it assessed sales tax on their sale. *Mellenbruch Studio v. Director of Revenue*, Case No. RS–85–0079. The assessment was upheld by the administrative hearing commission in 1987. *Id.* Far from invalidating the director's tax policy, the Court's decision today merely affirms it.

■ Sneary asserts that he was unaware of the director's policy regarding architectural illustrations. At the hearing, Sneary presented evidence that the *Mellenbruch* decision was not widely disseminated to Missouri's architectural community. Sneary misunderstands the purpose of § 143.903. Its purpose is to prevent application of tax decisions that change the law against those taxpayers who reasonably relied on the prior law. *Lloyd*, 851 S.W.2d at 523. The statute is not intended to impose a notice requirement on the director of revenue.

■ Since our decision affirming the assessment of sales tax on transactions involving the sale of architectural illustrations does not overrule a prior case or invalidate a previous statute, regulation, or policy, the decision is not unexpected under § 143.903.

#### The Equal Protection Challenge

■ Sneary's final argument is that the sales tax statute violates Missouri's equal protection clause, Mo. Const. art. I, § 2, if architectural services are taxed. Sneary asserts that taxing the sales at issue classifies service-oriented industries without a rational basis. As Sneary himself concedes, the law is applied unevenly only if one accepts as a premise that what Sneary sells and his customers buy is service. Since the transactions involve the sale of tangible personal property, and services simply constitute a cost incorporated therein, Sneary's equal protection argument fails.

The decision of the administrative hearing commission is affirmed.

THOMAS and LIMBAUGH, JJ., concur.

ROBERTSON, J., concurs in separate opinion filed.

HOLSTEIN, J., dissents in separate opinion filed.

PRICE, J., concurs in opinion of HOLSTEIN, J.

BENTON, J., not participating.

ROBERTSON, Judge, concurring.

I concur fully in the Court's opinion. I write separately to express my doubts about the continued validity of *James v. TRES Computer Systems, Inc.,* 642 S.W.2d 347 (Mo. banc 1982).

TRES Computer, a Texas based corporation, sold computer software to a Missouri customer. The software arrived at the customer's place of business on computer tapes by which the customer loaded the software onto its computer. The Court determined that the taxpayer owed use tax only on the fifty dollar retail value of blank computer tapes purchased by a Missouri customer and owed no tax on the remaining $135,000 purchase price.

The Court expressly refused to establish a "fixed, general rule" for taxation of software in the "rapidly developing" area of computer technology. *Id.* at 349. I believe the Court's hesitancy stemmed in large measure from the director of revenue's factual stipulation that the data transported on the computer tapes was "intangible property." In my view, that stipulation gave away the case and rendered the director's more metaphysical argument that the data became part of the tape itself untenable. Whether the data carried by a computer tape or a telephone line is intangible is a matter that this Court has not decided.

This case turns on the manner in which the taxpayer structures the transaction. His proposal letter clearly contemplates the sale of tangible property to the architectural firm, not the sale of architectural services. That Mr. Sneary is trained and licensed as an architect enhances his marketability; it does not change the nature of the transaction he enters, i.e., the sale of an illustration to an architectural firm. Nor does the fact that the architectural firm uses Mr. Sneary's product as a tool to enhance its services change the result. Mr. Sneary's work, though far different in appearance, is functionally equivalent to the purchase of paper and pencils by the architectural firm.

As is often the case in matters of taxation, simple adjustments in the transaction between Mr. Sneary and the architectural firms might allow Mr. Sneary to avoid sales tax liability. In matters of taxes, form often controls substance. Had Mr. Sneary contracted to provide architectural services instead of contracting to produce a specific item of tangible property for a set price, we would be faced with a different question.

HOLSTEIN, Judge, dissenting.

I respectfully dissent.

This case is part of what has become a continuing litany of cases attempting to draw a line between transfers of tangible property

and the performance of intangible services.[1] The former are subject to sales tax; the latter are not.

Contrary to Judge Robertson's concurring opinion, I believe *James v. TRES Computers Sys., Inc.*, 642 S.W.2d 347 (Mo. banc 1982), and *K & A Litho Process, Inc. v. Director of Revenue*, 653 S.W.2d 195 (Mo. banc 1983), were valiant efforts to establish the line of demarkation between the sale of tangible goods and performance of services. They adopted the "essence of the transaction" or "true object of the sale" standard for making the distinction. If the tangible personal property involved is merely the medium for transmission of intangible services, and the tangible component is of little utility to the purchaser, the intangible object of the sale does not assume the taxable character of the tangible medium. 642 S.W.2d at 389; 653 S.W.2d at 197.

I believe the decision of the majority here is mistaken in its reliance on the billings as evidence of the object of the transaction. Relying on the words of a bill generated by one of the parties to the transaction to determine whether it is taxable can only promote continued litigation where the taxpayer attempts to manipulate the billing to attain a favorable result while the tax collector attempts to pierce through real or perceived manipulations. The Court should keep its focus pinpointed on the actual transaction, not how the parties choose to characterize the transaction.

Indeed, this case presents the Court with an opportunity to clarify what has heretofore been imprecision in the "essence of the transaction" test regarding the applicability of sales tax. The cases in which the test has been applied favorably to the taxpayer suggest two general principles. Invariably, the item in question is some sort of original intellectual or original artistic composition commissioned by the purchaser. A second aspect of the transactions is that the medium by which the intellectual or artistic composition is transferred has inconsequential utility. These two common threads suggest a clear two-part test which is not so easily manipulated.

Looking at this transaction under the two-part test, it appears to meet both parts. First of all, Sneary's drawings were commissioned by the purchaser as original, intellectual or artistic compositions. Second, the paper, ink and paint, the elements of the medium by which the compositions are transferred, are of inconsequential utility.

To illustrate how this test would apply, consider the purchaser who commissions the composition of a song as compared with the purchaser who commissions a skilled craftsman to hand carve a desk. In both cases, substantial technical and artistic skills are involved. However, the desk has utility inde-

---

1. *Gammaitoni v. Director of Revenue*, 786 S.W.2d 126 (Mo. banc 1990) (instructional videotapes and videos of various events produced by taxpayer seller were object of the transaction because the seller made tapes from original ideas and information provided by the buyer, and services rendered were merely incidental to putting the buyer's ideas and information on tape); *Travelhost v. Director of Revenue*, 785 S.W.2d 541 (Mo. banc 1990) (purchase of magazines by salespeople for advertising distribution taxable as tangible personal property with Court establishing whether property is object of sale depends on whether property is retained or of no continuing use after employing for original purpose); *GTE Automatic v. Director of Revenue*, 780 S.W.2d 49 (Mo. banc 1989) (telephonic signals were incidental result of communication and once message conveyed, signal served no further purpose so telecommunications held service); *Int'l Business Machs. Corp. v. Director of Revenue*, 765 S.W.2d 611 (Mo. banc 1989) (IBM's software was held tangible property because it contained canned programs which required only minor modification to suit the customer and no programs were delivered by telephone, as in *TRES, infra*); *K & A Litho Process v. Director of Revenue*, 653 S.W.2d 195 (Mo. banc 1983) (color key produced by technical lithographic process using color separation of transparency held incidental to service because film purpose is only to convey transparency colors and has no further value); *James v. TRES Computers Sys., Inc.*, 642 S.W.2d 347 (Mo. banc 1982) (customized computer programs made by TRES on magnetic tapes were held to be intangible personal property because the tapes were merely incidental to the transaction as the medium by which services were transferred); *Universal Images v. Missouri Dept. of Revenue*, 608 S.W.2d 417 (Mo.1980) (filmed commercials purchased by Missouri business were held subject to use tax where the original film and script were provided by the purchaser, and the seller enlarged the film and mixed the sound track and film).

pendent of the artistic work. The desk is subject to tax. The song is not. Similarly, custom made automobiles, windows, doors, clothing or furnishings for homes or businesses may all involve great skill to create, but because each has a utility independent of the special skills involved, their sale is taxable. In addition, under the test I would adopt, sellers other than the person or entity commissioned to do the work would not be entitled to the benefit of the "essence of the transaction" test, only the initial seller who provides the original creative talent. Also, the original author, artist or composer would only be entitled to exemption from sales tax if the work involved was commissioned in advance by the particular purchaser involved in the transaction. Finally, the sale of forms, copies or reproductions of original work, no matter how well done, or, even if an improvement upon the original, would not qualify as intangible personal services; only original, intellectual or artistic compositions. Photographs would be exempt from sales tax only to the extent they otherwise meet the two-pronged test.

The two-faceted analysis I propose is consistent with the result in all of the cases in which the "true object of the sale" or the "essence of the transaction" tests have been applied, whether the result in the case was favorable to the taxpayer or to the director of revenue. The only course correction would be to make clear that disposition or retention of the item by the purchaser is relevant only to the extent that it is probative as to whether the medium has a utility independent of its intellectual or artistic content. This Court suggested in dicta in *Travelhost v. Director of Revenue*, 785 S.W.2d 541, 545 (Mo. banc 1990), that the critical question in determining whether there was a sale of goods or intangible property was whether the item transferred is retained by the purchaser or is of no continuing use after employed as part of a process for which it was created. Retention and use or disposal of an item by the purchaser after the completion of the process for which it was purchased cannot be the lynch pin. Architects' plans, accountants' audits and tax returns, lawyers' wills, deeds and contracts, and a myriad of other documents are retained indefinitely by purchasers of the services those documents represent, even though the initial process relating to their creation is complete. These items are often retained indefinitely because they contain important legal, financial, technical, promotional or historical information that is quite useful to the purchaser. Thus, I would conclude that long-term retention versus disposition after completion of a process cannot be the critical test.

Whenever possible, this Court should base its decision on neutral principles that are easily understood and applied. I suggest that reliance on the billing procedures of the parties and the vague "essence of the transaction" test as developed to date are bound to lead to repetitive litigation and potentially inconsistent and subjective results. In this particular case, I believe that applying the standards suggested above, the taxpayer should prevail. I therefore dissent.