**Joe GUTKNECHT, d/b/a Joe Gutknecht & Associates, Petitioner/Appellant,**

v.

**DIRECTOR OF REVENUE, State of Missouri, Respondent/Respondent.**

No. 63905.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 28, 1993.

H. Clay Billinsley, Klutho, Cody, Kilo & Flynn, St. Louis, for petitioner, appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Gretchen Garrison, Asst. Atty. Gen., Jefferson City, for respondent, respondent.

REINHARD, Judge.

This is an appeal from the decision of the Administrative Hearing Commission (AHC). Petitioner is an architectural illustrator, doing business as Joe Gutknecht and Associates. The Director of Revenue (Director) assessed sales tax on petitioner's transfers of illustrations that petitioner had produced and delivered to his clients. Petitioner challenged the assessments, arguing that the "true object" of the transactions was the sale of his professional services, rather than the illustrations themselves. The AHC upheld the assessments, concluding that the transactions involved the sale of tangible personal property. We affirm.

Petitioner's clients are architects, interior designers, and other persons preparing to build, remodel, or renovate buildings or other structures. He produces for his clients illustrations or "elevations" (artistic drawings of proposed exteriors or interiors for prospective or existing buildings). Petitioner testified that some of his clients have specific ideas as to how they want a building, structure or interior to look; other clients provide less input, allowing petitioner to greater utilize his own design ideas. In either case, there is usually extensive consultation with the client. Petitioner prepares intermediate drawings, and then seeks the client's input.[1] After the consultation process is complete, petitioner produces a final illustration, which he retains. The client is typically given a color matted illustration, a colored copy, a "photo mechanical" black and white copy, and thirty-five millimeter slides.

After a client describes a project, petitioner gives the client an estimate of what the project will cost. These estimates are not written. Petitioner is paid even if the client cancels the project and petitioner provides no final illustrations or slides. However, when a project is completed, the client's bill is categorized by illustration.

Two clients of petitioner testified that they frequently used the illustrations to either communicate a design or promote their services to prospective clients. One architect testified that his company would charge its clients for design presentations, and furnish the colored matted illustrations at no additional charge.

The Director audited petitioner for the period of July 1, 1986 through September 30, 1991. The audit disclosed $118,005.26 in sales that were, according to the auditor, subject to the sales tax. On April 24, 1992, the Director issued assessments for $6,785.76 in tax, and $1,696.46 in additions and interest for the period of July 1, 1986 to September 30, 1991. On July 17, 1992, the Director assessed $1,084.62 in tax, and $271.16 in additions and interest for the periods of October 1 through December 31, 1991 and January 1 through March 31, 1992. On October 30, 1992, the Director issued assessments for the period April 1 through June 30, 1992, for $541.31 in tax, and $138.58 in additions and interest.[2]

In his first point on appeal, petitioner argues that the assessed transactions were not taxable sales of tangible personal property within § 144.020, RSMo 1986, as found by the AHC. Rather, he asserts the transactions were the sale of his ideas and services. He also disputes specific findings of fact by the AHC.

This case is controlled by the recent supreme court case of *Sneary v. Director of Revenue*, 865 S.W.2d 342 (Mo. banc 1993), which was decided subsequent to the AHC's decision here. In that case, the Director assessed a sales tax on Sneary's architectural drawings. Architectural firms would bring Sneary "rough ideas, sketches, and photographs that Sneary refine[d] into three-dimensional illustrations." *Id.* 865 S.W.2d at

---

1. These intermediate drawings are ordinarily retained by petitioner, though he provides copies upon request.

2. The Director included in his assessment of April 24, 1992, $1,595.00 in sales tax for client billings in which petitioner provided no illustration or other tangible component. Those invoices were removed from the assessment. The Director also removed from his assessment the billings for illustration copies sent outside Missouri.

344. Sneary frequently received little guidance, and the process often involved client consultation at different stages until a final, ink and water color illustration was produced and given to the client. Sneary's practice was to enter into letter agreements to prepare the illustrations, with the price based on an estimate of the time required to complete the project. The price was set at a lump sum, or on an hourly rate not to exceed a fixed ceiling. The clients used the illustrations to support or promote efforts to obtain building projects. Sneary argued, *inter alia,* that the illustrations were merely a conduit to convey his intangible expertise. The court in *Sneary* stated:

> The transfer of ownership of the tangible architectural illustrations in this case for valuable consideration falls in the literal sense within the sales tax statute. This Court has recognized, however, that the "true object" or "essence of the transaction" determines whether to treat a transaction as a taxable transfer of tangible personal property or the non-taxable performance of a service. *The test focuses on the essentials of the transaction to determine the real object the buyer seeks.* Under the test, this Court has recognized a class of transactions in which tangible personal property serves exclusively as the medium of transmission for an intangible product or service. *The intangible component is the true object of the sale; the tangible component is of little utility and may even be discarded after the buyer has used it to obtain access to the intangible component.*

*Id.* 865 S.W.2d at 345. (Emphasis added) (citations omitted). The court identified three factors which distinguished Sneary's architectural drawings from cases in which the "true object" of the transaction was held to be intangible:[3] (1) his clients desired and used the tangible architectural drawings; (2) the tangible aspect of the architectural drawings did not serve merely as a disposable conduit for the information; and (3) the illus-

trations were a finished product. *Id.* 865 S.W.2d at 346.

It is clear that in the instant case petitioner's clients desired and used the tangible illustrations, the tangible aspect of the illustrations did not serve merely as a disposable conduit for petitioner's designs, and the illustrations were finished products. A sample billing of one of petitioner's frequent customers, McMahon Club Planners, for four particular perspectives rendered by petitioner of the Salsbury Country Club, contained individual charges attributable to each illustration. Additional charges were made by petitioner for, *inter alia:* mounting on formica; 2510 prints; and mylars.

Petitioner concedes the similarity of the facts of this case to *Sneary.* His primary distinction is that while Sneary merely took his *client's ideas* and transformed them into a tangible illustrative form, petitioner's illustrations and slides were the product of petitioner's own design ideas. Indeed, he argues, this was the "true object" of the transactions: his clients were purchasing his design "services", utilizing his "training, experience, skill and talent in creating and developing design concepts."

This aspect of architectural drawings was also addressed in *Sneary,* where the court stated:

> The level of technical or scientific skill required to produce a product may be relevant in determining whether the services constitute the true object of the sale. *The level of skill required to produce a product cannot otherwise cause a sale of tangible personal property to be exempted from the sales tax.* Although Sneary's illustrations require architectural skill to produce, the objects of the sale ... were the illustrations themselves.

*Id.* 865 S.W.2d at 346 (emphasis added).

While in *Sneary* the illustration was the *"sine qua non* of the service rendered," *Id.* 865 S.W.2d at 348, it does not appear to us that petitioner's allegedly more extensive de-

3. *See James v. TRES Computer Services,* 642 S.W.2d 347 (Mo. banc 1982) (sale of $135,000.00 worth of custom data and computer programs contained on computer tapes not taxable); and *K. & A. Litho Process, Inc. v. Director of Revenue,* 653 S.W.2d 195 (Mo. banc 1983) (transfer of color separated film and color keys used by petitioner's customers in preparing printing plates not taxable). These two cases are also primarily relied upon by petitioner in the instant case.

sign input in the illustration process warrants a different result here. As noted, the illustrations in the instant case met all of the *Sneary* factors for a finding of a sale of tangible personal property. The distinctions between *Sneary* and this case are not sufficient to permit a reversal of the AHC's decision, nor are the specific findings of fact of the AHC disputed by petitioner unsupported by substantial and competent evidence. *See* § 621.193, RSMo 1986.

Petitioner alternatively contends that if the sales at issue here constituted the sale of tangible personal property subject to the sales tax, such taxation was "unexpected" under § 143.903, RSMo Supp.1992.[4] We note that essentially the same argument petitioner raises in the instant case was rejected in *Sneary,* where the court stated:

> The assessment of sales tax to Sneary's architectural illustrations is not unexpected. Assessing sales tax on these transactions does not overrule a prior case or invalidate a previous statute or regulation. Sneary argues that it was the previous policy of the director not to assess tax on architectural services. Sales tax in this case, however, is assessed on Sneary's sale of tangible personal property. The director established its policy regarding architectural illustrations in 1985 when it assessed sales tax on their sale....

> \*    \*    \*    \*    \*    \*

> Since our decision affirming the assessment of sales tax on transactions involving the sale of architectural illustrations does not overrule a previous case or invalidate a previous statute, regulation, or policy, the decision is not unexpected under § 143.-903.

*Sneary,* 865 S.W.2d at 348–349.

The decision of the AHC is affirmed.

CRANDALL, P.J., and CRIST, J., concur.

---

4. In 1988, petitioner approached the Director to find if his architectural illustration sales were taxable. He received no definitive response on this inquiry.